# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Pekin Insurance Co. v. United Contractors Midwest, Inc., 2013 IL App (3d) 120803**

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. UNITED CONTRACTORS MIDWEST, INC., d/b/a R. A. Cullinan and Son, Inc., a Delaware Corporation, and CHARLES HILL, JR., Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-12-0803 |
| Rule 23 Order filed | August 2, 2013 |
| Motion to publish allowed | September 18, 2013 |
| Opinion filed | September 18, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the injuries suffered by a subcontractor's employee when the equipment he was using struck power lines, the trial court erred in finding that plaintiff, the subcontractor's insurer, had a duty to defend the general contractor as an additional insured, since the underlying complaint filed by the injured employee only alleged negligence on the part of the general contractor and made no allegation that the general contractor was vicariously liable for any of the subcontractor's conduct. |
| Decision Under Review | Appeal from the Circuit Court of Peoria County, No. 11-MR-461; the Hon. Michael E. Brandt, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Robert Marc Chemers (argued) and Richard M. Burgland, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellant. |
| | Craig L. Unrath (argued), Gary D. Nelson, Matthew S. Hefflefinger, and Tyler J. Pratt, all of Heyl, Royster, Voelker & Allen, of Peoria, for appellees. |
| Panel | PRESIDING JUSTICE WRIGHT delivered the judgment of the court, with opinion. |
| | Justice Carter concurred in the judgment and opinion. |
| | Justice O'Brien dissented, with opinion. |

**OPINION**

¶ 1     Pekin Insurance Company (Pekin) filed this declaratory relief action in response to a separate negligence complaint filed by Charles Hill, Jr. (Hill), in Peoria County, against United Contractors Midwest, Inc., d/b/a R.A. Cullinan & Son, Inc., a Delaware corporation (Cullinan), and Central Illinois Light Company (CILCO) in case No. 11-L-165. The underlying complaint alleged both defendants were independently negligent in supervising, maintaining and/or providing warnings regarding live overhead power lines near a work site where Hill's employer, Durdel & Sons Tree Service & Landscaping, Inc. (Durdel), was clearing trees. The negligence complaint alleged Hill, as Durdel's employee, operated machinery at the work site and struck overhead power lines, while moving logs, causing Hill to be injured by electricity.

¶ 2     In Pekin's action for declaratory relief, Pekin and Cullinan both filed motions for summary judgment. The court granted summary judgment in favor of Cullinan and against Pekin, finding Pekin had a duty to defend Cullinan, as an additional insured under Durdel's policy, in the negligence action filed by Hill against Cullinan.

¶ 3     Pekin appeals the circuit court's decision to grant summary judgment in favor of Cullinan. We reverse and remand.

¶ 4                     BACKGROUND

¶ 5     In November of 2009, Cullinan became the general contractor of a construction project for the Illinois Department of Transportation along Northmoor Road in Peoria, Illinois. As

the general contractor, Cullinan entered into a 15-page subcontract agreement with Durdel to clear trees and logs at the work site as an independent contractor/subcontractor.

¶ 6 On June 3, 2010, Durdel's employees, including Hill, were clearing trees and logs from the work site and Hill received injuries from electricity when he operated tree removal equipment that struck live overhead power lines. Consequently, on May 24, 2011, Hill filed a two-count negligence complaint, in Peoria County case No. 11-L-165, against Cullinan and CILCO. Count I of the complaint alleged Cullinan committed "Construction Negligence," and count II alleged CILCO committed general negligence. Hill's complaint did not contain any allegations that Durdel was negligent in any manner. On April 18, 2012, Cullinan filed a third-party complaint, in the underlying negligence case, alleging Durdel was solely negligent for Hill's injuries.

¶ 7 Cullinan contacted Pekin claiming it had a duty to defend Cullinan in Hill's negligence case, No. 11-L-165, as an additional insured under Durdel's policy. Pekin refused to represent Cullinan, claiming Durdel's policy did not cover Cullinan when the complaint alleged Cullinan was directly negligent for Hill's injuries, and not vicariously liable for Durdel's negligent actions. Thereafter, on November 10, 2011, Pekin filed a two-count complaint for declaratory relief, in Peoria County case No. 11-MR-461, against defendants Cullinan and Hill, asking the trial court to declare that: (1) Durdel's policy did not confer rights of insurance coverage to Cullinan for its own negligent acts or omissions, and (2) Pekin did not have a duty to defend Cullinan, as an additional insured under Durdel's insurance policy, for its own negligent actions alleged in Hill's underlying negligence complaint, No. 11-L-165. Both Pekin and Cullinan filed cross-motions for summary judgment in the instant case and attached copies of the relevant subcontract agreement, insurance policy, and the pleadings filed in case No. 11-L-165.

¶ 8 As part of the motions for summary judgment, the record contains a copy of the 136-page "Commercial Line Policy," issued by Pekin to Durdel for the period from June 3, 2010, to March 11, 2011, that lists Cullinan as one of 14 "additional insured" parties to this policy. The relevant clause in the "additional insured" portion of the policy provides:

"Section II–Who Is An Insured is amended to include as an insured any person or organization for whom you [Durdel] are performing operations, when you and such person or organization have agreed in a written contract *** and executed prior to the 'bodily injury' or 'property damage' for which coverage is sought, that you must add that person or organization as an additional insured on a policy of liability insurance (hereinafter referred to as the 'Additional Insured').

The Additional Insured is covered only with respect to vicarious liability for 'bodily injury' or 'property damage' imputed from You [Durdel] to the Additional Insured [Cullinan] as a proximate result of:

(1) Your ongoing operations performed for that Additional Insured during the Policy Period; or

(2) 'Your work' performed for the Additional Insured during the Policy Period, but only for 'bodily injury' or 'property damage' within the 'products–completed operations hazard.'

* * *

C. With respect to the coverage afforded to the Additional Insured, the following additional exclusions apply:

This insurance does not apply to:

(1) Liability for 'bodily injury' or 'property damage' arising out of the rendering of, or the failure to render, any professional services, including, but not limited to:

(a) The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b) Supervisory, inspection, architectural or engineering activities.

(2) Liability for 'bodily injury' or 'property damage' arising out of or in any way attributable to the claimed negligence or statutory violation of the Additional Insured, other than vicarious liability which is imputed to the Additional Insured solely by virtue of the acts or omissions of the Named Insured [Durdel]."

I. Pleadings in the Underlying Negligence Case

Hill's negligence complaint, in case No. 11-L-165, contained allegations of negligence based on acts or omissions by Cullinan and CILCO directly. The relevant portions of count I of Hill's complaint alleged:

"3. That at the aforesaid time and place and prior thereto, Cullinan, individually and through their agents, servants and employees, were present during the course of such design, supervision, erection, construction, repairs, alteration, improvement, paving and/or removal of structures. Cullinan participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work. In addition thereto, at that time and place, Cullinan had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason.

4. That on June 3, 2010[, Hill] was *** removing logs located adjacent to the street and in close proximity to power lines located overhead in his capacity as an employee for [Durdel] per the design, plan and supervision of Cullinan[,] their employees, agents, and/or assigns.

5. That while removing said logs, [Hill] was electrocuted when the machinery [Hill] was using to perform said work pursuant to the direction, design, supervision and/or plan of the Cullinan's [*sic*] came in contact with one of the overhead power lines.

6. That at the aforesaid time and place, and prior thereto, Cullinan's design, supervision, plan, erection, construction, repairs, alteration, improvement, paving and/or removal of structures *** placed [Hill] in a position on and adjacent to the aforementioned property and Cullinan either knew or in the exercise of reasonable care should have known was dangerous and likely to result in physical harm to [Hill].

7. That at all times material to this Complaint, Cullinan had a duty to exercise reasonable care *** to either prevent or protect individuals while working adjacent to the

-4-

property or warn of the hazards present therein.

8. Notwithstanding its duty, at said time and place, Cullinan, by and through their agents, servants and employees, were then and there guilty of one or more of the following careless and negligent acts and/or omissions."

The balance of the complaint asserts or restates various claims of alleged negligence against Cullinan relating to its: failure to inspect, design and supervise the work site; failure to provide adequate warnings or inspect for hazards at the site; and allowing an electrocution hazard to exist by acquiescing to Durdel's conduct allowing the removal of logs in close proximity to active power lines. The complaint further alleges that Cullinan's careless or negligent acts or omissions were the proximate cause of Hill's injuries.[1]

¶ 11    Cullinan filed a motion for summary judgment with a memorandum of law which contained attached exhibits, including Cullinan's "Amended Third-Party Complaint," filed against Durdel in Hill's negligence action, case No. 11-L-165, on April 18, 2012. Cullinan also attached the subcontract agreement between Cullinan and Durdel, which detailed the terms of the work to be performed by Durdel as a subcontractor at the work site.

¶ 12    The subcontract agreement provided that Durdel was hired to remove approximately 200 trees from the site. The subcontract agreement required the subcontractor to procure its own insurance coverage for the project and name the contractor as an additional insured.

¶ 13    The subcontract agreement also stated the "[s]ubcontractor does hereby agree to furnish, erect, and install all materials and perform all work," and "[s]ubcontractor shall, at all times, have a competent foreman and superintendent, satisfactory to Contractor, present on the project with full authority to take such actions and maintain such equipment as may be required to perform the work under this Subcontract Agreement, and procure such labor and materials to diligently perform the subcontract work." This agreement required Durdel to "employ sufficient crews and work sufficient hours or shifts so as not to hinder or delay the actual progress of Contractor" and included a provision that the subcontractor would fully comply with all OSHA safety requirements. Finally, the subcontract agreement contained an "indemnification" clause requiring the subcontractor, Durdel to "defend, indemnify and hold harmless Contractor [Cullinan], its officers, directors, employees, agents and consultants, from and against all claims, including jurisdictional claims, liabilities, damages, demands, losses, and expenses (including attorneys' fees and costs), arising out of, relating to, or resulting from [Durdel's] performance, or failure to perform the work under this Subcontract Agreement."

¶ 14                        II. The Declaratory Relief Proceedings

¶ 15    In Pekin's action for declaratory relief, both Pekin and Cullinan filed cross-motions for summary judgment and legal memoranda supporting their respective positions. Pekin argued it did not have a duty to defend Cullinan for Cullinan's own negligence, based on the

---

[1]Nothing in the complaint refers to any negligent acts or omissions by Hill's employer, Durdel, the "named insured" in the insurance policy at issue.

language of Durdel's insurance policy listing Cullinan as an additional insured. Pekin argued Hill's negligence complaint did not contain any allegations of liability that could be vicariously imputed to Cullinan based on Durdel's conduct.

¶ 16    Cullinan's cross-motion for summary judgment alleged Pekin had a duty to defend Cullinan because the third-party complaint, filed by Cullinan in case No. 11-L-165, together with extrinsic evidence, including the subcontract agreement and Durdel's answer to the third-party complaint, gave rise to potential issues related to vicarious liability arising out of Durdel's conduct at the work site.

¶ 17    Both parties filed legal briefs and presented argument regarding their motions for summary judgment. Subsequently, on September 12, 2012, the court entered the following written order:

> "Motion for summary judgment is granted in favor of [Cullinan]. [Pekin] owes [Cullinan] a duty to defend because the underlying complaint shows the *potential* that liability arises from Durdel's (the sub-contractor) actions or omissions. Essentially the underlying plaintiff [Hill] is alleging that [Cullinan] sufficiently retained control over operative details of the work to make it vicariously liable. (See pars. 3 to 5 in the underlying plaintiff's complaint). In addition[,] the third-party complaint in the underlying action (an item beyond the underlying complaint) likewise establishes a *potential* that [Cullinan] is liable for Durdel's actions or omissions. See *Pekin Insurance v. Wilson*, 237 Ill. 2d 446 (2010); *Pekin Insurance v. Pultke* [*sic*] *Home Corporation*, 404 Ill. App. 3d 336 (1st Dist. 2010). *Wilson* authorizes the instant examination; there is no conflict between Appellate Courts. *Wilson* at p. 459. *Pultke* [*sic*] applies *Wilson* to facts very similar to the case at bar." (Emphases in original.)

¶ 18    Pekin filed a timely appeal challenging the court's finding that Pekin had a duty to defend Cullinan in the underlying negligence complaint, case No. 11-L-165, and granting summary judgment in favor of Cullinan.

¶ 19                                    ANALYSIS

¶ 20    The subcontract agreement between Durdel, an independent contractor, and Cullinan, the general contractor, required Durdel to obtain an insurance policy naming the general contractor, Cullinan, as an additional insured. Durdel fulfilled this contractual obligation through a Pekin insurance policy. The trial court granted summary judgment in favor of the general contractor, Cullinan, after finding Pekin had a duty to defend Cullinan, in Hill's underlying negligence complaint, as an additional insured. On appeal, Pekin contends the trial court erred by allowing Cullinan's motion for summary judgment and denying Pekin's cross-motion for summary judgment in the declaratory relief action.

¶ 21    It is well established that, in a declaratory judgment action such as the case at bar, where the issue is whether the insurer has a contractual duty to defend pursuant to an insurance policy, a court ordinarily looks first to the allegations in the underlying complaint and compares those allegations to the relevant provisions of the insurance policy. *Wilson*, 237 Ill. 2d at 455; *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 107-08 (1992). "An insurer may not justifiably refuse to defend an action against its insured unless

it is *clear* from the face of the underlying complaints that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." (Emphasis in original.) *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). Therefore, if the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises. *Wilson*, 237 Ill. 2d at 455; *Outboard Marine*, 154 Ill. 2d at 107-08.

¶ 22        Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). Here, the parties agree, since this case involved the court's ruling on cross-motions for summary judgment, we conduct a *de novo* review. *Wilson*, 237 Ill. 2d at 455; *Outboard Marine*, 154 Ill. 2d at 102.

¶ 23        When construing the language of an insurance policy, a court's primary objective is to ascertain and give effect to the intentions of the parties as expressed in their insurance contract. *Wilson*, 237 Ill. 2d at 455. In order to ascertain the meaning of the policy's language and the parties' intent, the court must construe the policy as a whole and consider the type of insurance purchased, the nature of the risks involved, and the overall purpose of the insurance contract. *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001); *Outboard Marine*, 154 Ill. 2d at 108. If the words of a policy are clear and unambiguous, a court must afford them their plain and ordinary meaning. *Id.* The construction of the provisions of an insurance policy involves a question of law for which we conduct a *de novo* review. *Wilson*, 237 Ill. 2d at 455, *Outboard Marine*, 154 Ill. 2d at 108.

¶ 24        With these principles in mind, we first review the provisions of Durdel's insurance policy issued by Pekin. We will compare the language of the policy to the allegations of Hill's complaint to determine whether Pekin has a duty to defend Cullinan, as an additional insured, according to the terms of the policy. The applicable language of Durdel's policy, defining the scope of coverage for an additional insured, provides:

        "The Additional Insured is covered only with respect to vicarious liability for 'bodily injury' or 'property damage' imputed from You [Durdel] to the Additional Insured as a proximate result of:

        (1) Your ongoing operations performed for that Additional Insured during the Policy Period; or

        (2) 'Your work' performed for the Additional Insured during the Policy Period, but only for 'bodily injury' or 'property damage' within the 'products–completed operations hazard.' "

The policy also lists the following exclusions to the coverage for an additional insured:

        "This insurance does not apply to:

        ***

        (2) Liability for 'bodily injury' or 'property damage' arising out of or in any way attributable to the claimed negligence or statutory violation of the *Additional Insured*, other than vicarious liability which is imputed to the Additional Insured solely by virtue

-7-

of the acts or omissions of the Named Insured [Durdel]." (Emphasis added.)

Based on these provisions, the parties agree the policy at issue clearly names Cullinan as an additional insured. We note the policy requires Pekin to defend Cullinan only against claims arising out of *Durdel's* work or "ongoing operations performed for that Additional Insured during the Policy Period."

¶ 25    Generally, a person who employs an independent contractor is not vicariously liable for the acts or omissions of an independent contractor except under very specific circumstances where the general contractor retains control over the independent contractor's work. See *Moiseyev v. Rot's Building & Development, Inc.*, 369 Ill. App. 3d 338, 344 (2006) (citing Restatement (Second) of Torts § 414 (1965)). In *Moiseyev*, this court applied the restatement, examined similar cases, and concluded that courts have had "difficulty interpreting the term 'control' and distinguishing between control which exposes a defendant to liability and control which is considered merely supervisory." *Moiseyev*, 369 Ill. App. 3d at 345.

¶ 26    Next, we review the allegations of Hill's underlying negligence complaint to determine whether the complaint alleges sufficient facts alleging *Durdel's* "ongoing operations performed for that Additional Insured during the Policy Period" to warrant coverage and a duty to defend Cullinan, as an additional insured, based on a theory of vicarious liability resulting from Durdel's performance. This theory would also require allegations that Cullinan exercised such control over Durdel's "ongoing operations" such that the general contractor could be held vicariously liable for the acts of the insured subcontractor, Durdel.

¶ 27    Hill's complaint alleges Cullinan, as a general contractor, owed a duty to use reasonable care to supervise, inspect, and provide a safe work site for Hill by protecting him from or warning him about existing hazards. However, Hill did not allege any facts in his complaint identifying a negligent act performed by *Durdel* which resulted from the stringent directives of the general contractor and additional insured (Cullinan).

¶ 28    Rather, Hill's complaint alleged *Cullinan*, acting alone, negligently violated Cullinan's duty of care to Hill by failing to supervise and warn Hill of the dangers posed by the live, overhead power lines on or near the work site. The failure to specify a negligent act committed by Durdel not only fails to trigger coverage to an additional insured in Durdel's insurance policy, but also defeats a theory of vicarious liability. Simply stated, we conclude a general contractor, such as Cullinan, cannot be found to be vicariously liable for its own acts. Thus, based on the complaint alone, the trial court erred in granting summary judgment in favor of Cullinan.

¶ 29    However, our analysis does not end here because the trial court looked beyond the underlying complaint and considered Cullinan's third-party complaint when determining Pekin's duty to defend Cullinan, as the additional insured in this case. The trial judge's order includes this language:

"In addition[,] the third-party complaint in the underlying action (an item beyond the underlying complaint) likewise establishes a *potential* that [Cullinan] is liable for Durdel's actions or omissions." (Emphasis added.)

Although some courts have recognized that a trial court can properly review a third-party complaint as extrinsic evidence in a declaratory relief action, pursuant to the authority

discussed in *Wilson*, 237 Ill. 2d at 458-62, there are limitations on whether the trial court must necessarily consider a third-party complaint prepared by the additional insured seeking coverage. See *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312, 322 (2009); *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 180 (2008).

¶ 30    For example, the trial court refused to allow a putative additional insured to bolster its claim of coverage by referencing its own third-party complaint in the *DePaul University* case. *DePaul University*, 383 Ill. App. 3d at 180. The appellate court held that, under those facts, a third-party complaint cannot be used to bolster that same third-party plaintiff's own claim, as a putative additional insured, where the facts are deficient in the underlying negligence complaint and other extrinsic evidence to potentially fall within the policy's coverage. *Id.* These facts are distinguishable from a companion case, cited by Cullinan, *American Economy Insurance Co. v. Holabird & Root*, 382 Ill. App. 3d 1017 (2008).

¶ 31    The *National Fire* case involved facts similar to *DePaul* where Walsh, an additional insured and a defendant in an underlying negligence case, asked the court to consider facts alleged in Walsh's own third-party complaint to establish that the insurance company had a duty to defend him as an additional insured. *National Fire*, 392 Ill. App. 3d at 322. In that case, the court noted Walsh filed the third-party complaint *after* the declaratory relief action was filed by the insurance company. Based on this observation, the court concluded Walsh filed his third-party complaint to supply the missing allegations from the original complaint in an attempt to gain coverage as the additional insured under the policy. *Id.* Accordingly, the trial court in that case properly refused to consider the third-party complaint. *Id.*

¶ 32    We consider this approach to be the correct approach in the case at bar. Similarly, the additional insured (Cullinan) filed its third-party complaint in this case after Pekin initiated the declaratory action. Consequently, when examining the court's ruling on summary judgment *de novo*, we will not consider Cullinan's potentially self-serving, third-party complaint for purposes of summary judgment due to this existing case law.

¶ 33    We conclude the underlying complaint did not contain any facts alleging Durdel negligently conducted its ongoing operations, performed as a subcontractor for the additional insured, that would support a vicarious liability claim against the general contractor. In this case, the underlying complaint stated a claim based solely on the negligence of the general contractor alone. Therefore, the trial court erred in finding that Pekin Insurance had a duty to defend the general contractor as an additional insured since the complaint did not allege the general contractor was vicariously liable for Durdel's conduct.

¶ 34                                CONCLUSION

¶ 35    For the foregoing reasons, we reverse the judgment of the circuit court of Peoria County granting summary judgment for Cullinan and remand and order that the circuit court enter summary judgment in favor of Pekin, finding that Pekin does not owe a duty to defend Cullinan in Hill's negligence case No. 11-L-165.

¶ 36    Reversed and remanded.

¶ 37    JUSTICE O'BRIEN, dissenting.

¶ 38    For the following reasons, I respectfully dissent from the majority decision.

¶ 39    The majority considers the underlying complaint alleges that Cullinan alone was negligent, and because Cullinan cannot be vicariously liable for its own negligence, the possibility of coverage is precluded under the policy. According to the majority, the underlying complaint failed to allege facts identifying a negligent act by Durdel that resulted from Cullinan's supervisory directives. I consider that the allegations in the complaint are sufficient to satisfy the low threshold necessary to implicate Pekin's duty to defend. *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 594 (2009) (duty to defend exists where allegations in underlying complaint fall even potentially within policy's coverage). The underlying complaint alleges that Cullinan was in charge of the typical functions of a jobsite, including the removal of trees, and that "Cullinan, individually and through their agents, servants and employees were present during the course of such design, supervision, *** and/or removal of structures"; participated in coordinating the work, and designated the work methods used in the tree removal; checked work progress; scheduled work; inspected the work; and had the authority to stop or refuse work and to order changes in the work. The complaint further alleges that Hill was injured while removing logs "in his capacity as an employee for [Durdel] per the design, plan and supervision of Cullinan[,] their employees, agents, and/or assigns."

¶ 40    As I read the underlying complaint, it alleges both direct and indirect negligence against Cullinan, asserting allegations against "Cullinan, individually and through their agents, servants and employees." Moreover, Hill specifically alleges that he was moving logs in accord with his employment by Durdel pursuant to work methods designated by Cullinan. I agree with the trial court's assessment that Hill alleged in the underlying complaint that Cullinan "sufficiently retained control over operative details of the work to make it vicariously liable." *Moiseyev v. Rot's Building & Development, Inc.*, 369 Ill. App. 3d 338, 351 (2006) (enumerating circumstances that establish the requisite retention of control to establish general contractor's duty to an independent contractor). The allegations assert that Cullinan designated work methods, maintained supervisory authority effecting the means and methods of Durdel's work, and participated in, coordinated and inspected Durdel's work. The complaint alleges facts that could establish Cullinan's role went beyond mere supervision and retained control such that it could be liable for Durdel's negligence. *Larson v. Commonwealth Edison Co.*, 33 Ill. 2d 316, 324-25 (1965); Restatement (Second) of Torts § 414, cmt. c (1965) (general contractor typically not liable for subcontractor's negligence except where the general contractor retains the right to control the subcontractor's work such that the subcontractor is not "entirely free to do the work in his own way").

¶ 41    Significantly, the policy language provides coverage for vicarious liability proximately resulting from Durdel's "ongoing operations performed for" Cullinan. The allegations in the underlying complaint suggest that Hill's injury arose from Durdel's ongoing operations, *i.e.*, tree removal, performed at Cullinan's direction and per its work methods. Under these facts, Cullinan could be found vicariously liable based on Durdel's sole negligence. In my view,

the allegations trigger a duty to defend. I find that the allegations in the underlying complaint do not preclude that Cullinan could be liable under a theory of vicarious liability and that Pekin has a duty to defend Cullinan as an additional insured under Durdel's policy.

¶ 42    The third-party complaint filed by Cullinan against Durdel and the subcontract between Durdel and Cullinan also support the potential for coverage. Both documents demonstrate the circumstances concerning Durdel's ongoing operations performed for Cullinan and provide facts supporting the possibility that Cullinan could be vicariously liable for Durdel's negligence based on the degree of control Cullinan retained over the manner in which Durdel performed its work, triggering Pekin's duty to defend. The trial court looked to Cullinan's complaint against Durdel, where Cullinan alleged that Durdel undertook and supervised all aspects of the tree removal and that Cullinan was not on the jobsite when the accident occurred. The complaint included claims for contribution and indemnity. The trial court also looked to the subcontract between Cullinan and Durdel, which obligated Durdel to provide materials and perform the tree removal at the jobsite. Per the Cullinan/Durdel subcontract, Durdel was required to "employ sufficient crews and work sufficient hours so as not to hinder" Cullinan's progress and/or its compliance with Cullinan's contract with the property owner. Cullinan had the right to determine and change "the time, order and priority" in which Durdel's work was performed and to issue mandatory change orders to Durdel. Durdel could not assign the subcontract or sublet work under it without Cullinan's written consent. Durdel was to perform its work "in such manner as [Cullinan] may regard as best calculated to coordinate" with Cullinan's work and the work of other contractors on the project. Finally, the subcontract granted Cullinan the right to seek the removal of any Durdel employees, agents or representatives Cullinan "deemed objectionable" and to approve Durdel's choice of jobsite foreman and superintendent. The contract also included an indemnity provision protecting Cullinan for Durdel's negligent acts or omissions. These additional facts further support Pekin's duty to defend.

¶ 43    The majority rejected the trial court's use of extrinsic evidence in determining whether Pekin owed Cullinan a duty to defend. In my view, the trial court properly considered Cullinan's third-party complaint against Durdel and the Cullinan/Durdel subcontract as aids in construing the parties' intent regarding coverage of the additional insured. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 459 (2010) (a trial court may look beyond the complaint to other evidence so long as it does not decide an issue critical to the underlying action). The majority relies on *American Economy Insurance Co. v. DePaul University*, 383 Ill. App. 3d 172, 180 (2008), and *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312, 322 (2009). The reviewing courts in both cases found significant that the third-party plaintiffs were also the parties claiming coverage in the declaratory judgment action and that the third-party complaints were filed to add missing allegations. *DePaul*, 383 Ill. App. 3d at 180; *National Fire*, 392 Ill. App. 3d at 322. Neither case, however, discussed the import of an indemnity clause in an underlying contract as existed between Durdel and Cullinan in the case at bar. The Cullinan/Durdel contract was not filed to fill in information. Rather, it is evidence regarding the parties' intent that Durdel bear the responsibility for defending and indemnifying Cullinan for any actions related to Durdel's work on the Cullinan jobsite. *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 344 (2010)

-11-

(noting that indemnity clause in contract between general contractor and subcontractor supported duty to defend where subcontractor could be found solely liable per allegations in underlying complaint). While the majority characterizes the third-party complaint as potentially self-serving, I see it as a vehicle for Cullinan to enforce the indemnity provisions of its contract with Durdel. Both the third-party complaint and the Cullinan/Durdel contract indicate the parties intended that Cullinan would not be liable for Durdel's negligent acts or omissions. The trial court's use of them did not decide an issue critical in the underlying action and its consideration of them was not improper.

¶ 44    I would find that there was no error in the trial court's use of the extrinsic evidence and would affirm the trial court's finding that Pekin owed Cullinan a duty to defend.