2016 IL App (3d) 140469

Opinion filed March 29, 2016

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| PEKIN INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of the 13th Judicial Circuit, |
| Plaintiff-Appellee, | ) | La Salle County, Illinois |
| | ) | |
| v. | ) | |
| | ) | |
| ILLINOIS CEMENT COMPANY, LLC, an Illinois | ) | Appeal No. 3-14-0469 |
| Limited Liability Company, | ) | Circuit No. 11-MR-156 |
| | ) | |
| Defendant-Appellant | ) | |
| | ) | |
| (Perino Plumbing & Heating, Inc., an | ) | |
| Illinois Corporation, Michael Hanson and | ) | |
| Cheryl Hanson, | ) | |
| | ) | Honorable Joseph P. Hettel, |
| Defendants). | ) | Judge, Presiding. |

_____

JUSTICE WRIGHT delivered the judgment of the court, with opinion.
Justices Carter and Holdridge concurred in the judgment and opinion.

_____

**OPINION**

¶ 1      Illinois Cement Company, LLC (ICC), hired Perino Plumbing & Heating, Inc. (Perino) to

provide labor and materials to install a trash pump, purchased from Perino, on ICC's commercial

property.  Perino obtained an insurance policy from Pekin Insurance Company (Pekin), which

listed ICC as an additional insured for any vicarious liability attributable to ICC due to Perino's

negligence.  Pekin issued a letter to ICC refusing to defend ICC in an underlying negligence

action against ICC initiated by Michael Hanson, Perino's employee, because Hanson's complaint only alleged ICC's direct negligence and failed to allege any negligent act on the part of Perino. Subsequently, ICC filed a third-party complaint against Perino in Hanson's underlying negligence action alleging breach of contract and claiming Perino's own negligence caused or contributed to Hanson's injuries.

¶ 2        Pekin filed a complaint for declaratory relief in the circuit court against ICC, Perino, and Hanson asking the trial court to declare that Pekin did not have a duty to defend the property owner, ICC, as an additional insured under Perino's policy. Pekin contended the court should disregard ICC's third-party complaint that alleged Perino's negligent acts or omissions, as Hanson's employer, resulted in his injuries. Relying on this court's recent decision in *Pekin Insurance Co. v. United Contractors Midwest, Inc.*, 2013 IL App (3d) 120803 (*United Contractors*), the trial court granted summary judgment in favor of Pekin and refused to consider ICC's self-serving, third-party complaint filed in the negligence action. ICC appeals the trial court's award of summary judgment in favor of Pekin. We affirm.

¶ 3                                BACKGROUND

¶ 4        On March 23, 2010, Perino and ICC entered into a purchase order contractual agreement prepared by ICC. As part of this contract, ICC was to pay Perino for the installation of a trash pump and a PVC line on ICC's commercial property. The purchase order indicated that Perino would provide the trash pump and materials necessary for its installation. The purchase order further stated:

> "**ICC insurance requirements must be met prior to beginning work and maintained throughout the job.
> **ICC insurance requirements are attached.
> **Acknowledgement of the PO and the attachment(s) must be signed, dated, and returned to ICC prior to beginning work."

2

There was an attached document to the purchase order, which was an untitled, one-page, boiler-plate document that did not expressly detail any insurance requirements.  Paragraph 1 of the attached document provided: "This purchase order when accepted by [Perino] is the entire contract of the parties."  Paragraph 10 of the same attached document, entitled "Warranties and Indemnification," provided:

> "In addition to all other express warranties and implied warranties, [Perino] represents and warrants that all goods, services, and Service Results (as defined below) delivered or provided pursuant to this order will fully conform in all respects with the Specifications furnished, specified or approved by [ICC]  *** [Perino] shall indemnify and hold [ICC] harmless from and against any loss, liability, damage or expense whatsoever including attorney's fees that [ICC] may incur or suffer as a result of or in connection with any act or omission of [Perino], negligent or otherwise, or any breach of [Perino's] representations or warranties or of any other term or condition of this order."

The purchase order included a stamped "Acknowledgement" signed by Perino or his agent on April 21, 2010.  Although this attached document does not specify the insurance requirements, the parties agree that Perino obtained a "Commercial Lines Policy" through Pekin for this work project that included ICC as an "additional insured" and detailed the scope of the coverage.  On April 30, 2010, Hanson was employed by Perino and working on the project on ICC's property as detailed in the purchase order.  While working on the installation of the trash pump on ICC's property, Hanson slipped and sustained injuries requiring medical treatment.

3

¶ 5                                    I. Perino's "Commercial Lines Policy"

¶ 6          Pekin issued a commercial lines insurance policy, in effect from April 16, 2010, to April 16, 2011, to Perino. This insurance policy included ICC as an "additional insured." The relevant clause in the "additional insured" endorsement of the policy provided:

"A. *** With respect to coverage afforded under this section of the endorsement, Section II – Who Is An Insured is amended to include as an insured any person or organization for whom you are performing operations, when you and such person or organization have agreed in a written contract *** and executed prior to the 'bodily injury' or 'property damage' for which coverage is sought, that you must add that person or organization as an additional insured on a policy of liability insurance (hereinafter referred to as the 'Additional Insured').

The Additional Insured is covered only with respect to vicarious liability for 'bodily injury' or 'property damage' imputed from You [Perino] to the Additional Insured [ICC] as a proximate result of:

(1) Your ongoing operations performed for that Additional Insured during the Policy Period; or

* * *

C. With respect to the coverage afforded to the Additional Insured, the following additional exclusions apply:

This insurance does not apply to:

(1) Liability for 'bodily injury' or 'property damage' arising out of the rendering of, or the failure to render, any professional services, including, but not limited to:

4

(a)  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

(b)  Supervisory, inspection, architectural or engineering activities.

(2)  Liability for 'bodily injury' or 'property damage' arising out of or in any way attributable to the claimed negligence or statutory violation of the Additional Insured [ICC], other than vicarious liability which is imputed to the Additional Insured [ICC] by virtue of the acts or omissions of the Named Insured [Perino]."

¶ 7      The insurance policy also included a document entitled "Certificate of Liability Insurance" showing Perino as the named insured in the policy and ICC as an additional insured. This certificate of insurance also expressly stated that "THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES."  This certificate contained a disclaimer that provided:

"THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER."

5

¶ 8                                II. Pleadings in Hanson's Underlying Negligence Action

¶ 9            On March 8, 2011, Hanson filed a negligence complaint on his own behalf against ICC, in La Salle County case No. 11-L-59, alleging ICC had a duty, as the property owner, to keep its premises in a reasonably safe condition for Hanson and others on the property, and to not create or allow any dangerous conditions to exist on or about the premises. The underlying complaint alleged Hanson was working on the installation of the trash pump for Perino on ICC's premises, on April 30, 2010, while ICC "owned, operated, maintained and controlled" the facility located in La Salle, Illinois. The original complaint alleged that on April 30, 2010, ICC employees loaded a tanker and caused water to overflow from it. Hanson was walking on ICC's premises, carrying an injector sewage pump, when he slipped in the overflow and incurred injuries. The complaint alleged that ICC committed one or more of the following negligent acts:

"a) Failed to provide a good, safe and proper place for [Hanson] to be, use, occupy and walk upon while on the premises;

b) Allowed and permitted the floor to be and remain in a slippery condition;

c) Failed to inspect the premises to be certain it was in a good, safe and proper condition;

d) Failed to ensure proper procedures were followed to load tankers and remove slippery substances from the floor; and

e) Failed to warn [Hanson] that the floor was in a slippery and dangerous condition."

The underlying complaint alleged plaintiff suffered permanent injuries as a direct and proximate result of ICC's negligent acts or omissions.

¶ 10           Six months later, on August 16, 2011, ICC filed a third-party complaint against Perino, in Hanson's underlying negligence case, alleging Perino breached its contract for failing to take

steps to indemnify ICC in count I.[1]  A second count in ICC's third-party complaint was entitled

"Count II - Negligence, Contribution Act."  This count alleged Perino, as Hanson's employer,

had a duty "to provide sufficient personnel, equipment and other means necessary to accomplish

the work to be performed on the premises of [ICC]."  ICC's third-party complaint further alleged

that *Perino* committed one or more of the following negligent acts or omissions:

> "A.  In disregard of its duty to supervise and control its employee or employees,
> plaintiff was injured.
>
> B.  Failed to provide sufficient personnel or equipment such that plaintiff
> sustained the injury alleged.
>
> C.  Was otherwise negligent in its conduct in providing services under said
> agreement."

ICC's third-party complaint alleged that Perino, as a consequence of one or more of the above

acts, caused or contributed to cause Hanson's alleged injuries.

¶ 11        Subsequently, in the underlying negligence action on March 8, 2012, Hanson and his

wife, Cheri Hanson (Hanson's wife), as a second plaintiff, filed a two-count first amended

negligence complaint, followed by a second amended negligence complaint on December 19,

2013.[2]  In the first amended negligence complaint, count I alleged injuries suffered by Hanson

and count II alleged injuries suffered by Hanson's wife, including loss of income and

consortium.  Both counts in the first amended complaint alleged ICC was responsible for its

---

[1]ICC filed its third-party complaint four months after Pekin sent a letter to ICC on April 6, 2011, denying coverage for ICC as an additional insured and telling ICC that Pekin would file a declaratory action in court if ICC did not accept the denial of coverage within seven days.

[2]Hanson's second amended complaint was not filed until after the court ruled on Pekin's motion for declaratory relief in the instant case.  Therefore, we refer to the language used in the first amended complaint for purposes of this appeal.  Hanson's second amended complaint only added a few additional facts to one paragraph of the first amended complaint regarding ICC's direct negligence and the change has no bearing on the outcome of this appeal.

commercial premises and all ongoing activities on the premises. Further, the complaint alleged ICC controlled the work performed on its premises to assure worker safety or alleviate equipment deficiencies or improper work habits. The first amended complaint omitted the allegation that ICC loaded a tanker, causing water to overflow, but provided ICC was negligent, in part, in one or more of the following ways:

> "5. That at the aforesaid time and place, and prior thereto, [ICC] individually and through agents, servants and employees, erected, constructed, maintained, placed or operated, or caused to be erected, constructed, maintained, placed or operated, a certain set of stairs, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal and/or painting.
>
> 6. That [ICC] had a duty to exercise reasonable care for the safety of [Hanson].
>
> 7. That [ICC] had a direct duty and a derivative duty pursuant to Restatement (Second) of Torts § 414 (1965) and each of its subparts.
>
> 8. That [ICC] had a duty to comply with the Restatement (Second) of Torts § 343 (1965) and each of its subparts."

The first amended negligence complaint also asserted that ICC acted negligently when it failed to: maintain the premises in a reasonably safe condition for use by Hanson and others, provide Hanson and others with a safe place to work and walk, correct an unsafe condition causing a slipping hazard, adequately supervise and inspect the work site, and have a protocol in place to prevent and/or correct unsafe conditions. Specifically, the underlying first amended complaint alleged in relevant parts that ICC was negligent when it:

8

"f) Allowed and permitted the premises and/or stairs to be and remain in a slippery and/or unsafe condition;

\*\*\*

h) Permitted accumulation of debris and/or cement on said stairs."[3]

¶ 12                    III. Declaratory Complaint Filed by Pekin Against ICC

¶ 13         After Hanson filed his negligence lawsuit against ICC on March 8, 2011, regarding the injuries Hanson received while working at ICC's facility, ICC tendered a demand to Pekin on March 31, 2011, to defend ICC in this action as an "additional insured" under Perino's policy. On April 6, 2011, Pekin sent a letter denying the request to defend ICC in this action because Hanson's complaint only alleged ICC's direct negligence for Hanson's injuries and Perino's insurance policy only covered ICC if it was vicariously liable for Perino's negligence. Pekin's denial letter further informed ICC that Pekin would file a declaratory lawsuit against ICC if ICC did not notify Pekin, within seven days, that it accepted Pekin's denial to defend.[4]

¶ 14         On August 30, 2011, Pekin filed a two-count complaint for declaratory judgment (declaratory complaint) in the instant case against ICC, Perino, and Hanson. Subsequently, on May 25, 2012, Pekin filed the three-count second amended declaratory complaint, at issue, which added Hanson's wife as a defendant. Count I asked the court to declare that the "Certificate of Insurance" document conferred no rights to ICC based on its express language. Count II asked the court to declare that Pekin did not have a duty to defend ICC because no written contract existed between ICC and Perino that required Perino to include ICC as an

---

[3] There are no facts pled in the allegations in the original or amended negligence complaints alleging any negligence on Perino's part, Hanson's employer, for which ICC could be vicariously liable.

[4] ICC filed its third party complaint against Perino in the underlying negligence action six months after Pekin denied coverage to ICC and just prior to Pekin filing the declaratory action in the case at bar.

additional insured on Perino's policy.[5]  Count III alleged Pekin did not have a duty to defend

ICC because the additional insured endorsement in Perino's policy specifically excluded

coverage for the direct negligence of the additional insured (ICC).

¶ 15                    IV.  Motion for Summary Judgment in the Declaratory Action

¶ 16            On September 21, 2012, Pekin filed a motion for summary judgment on its second

amended declaratory complaint, in the instant case, with a memorandum of law arguing the

pleadings demonstrated that Perino's insurance policy did not provide coverage to ICC, as an

additional insured, because the underlying negligence complaint only alleged facts concerning

ICC's direct negligence with no references to negligence by Perino.  Therefore, without alleging

vicarious liability, Pekin did not have a duty to defend ICC.

¶ 17            The trial court conducted a hearing on Pekin's motion for summary judgment on

April 11, 2013, and denied the motion for summary judgment on two grounds.  First, the court

found that an issue of fact existed regarding whether or not there was a written contract between

Perino and ICC requiring Perino to add ICC as an additional insured.  This question of fact

barred the court from granting summary judgment on count II of the pleadings.  Second, the

court found that it had to consider ICC's third-party complaint, filed in Hanson's underlying

negligence action, which alleged ICC's vicarious liability for Perino's negligence and created a

duty for Pekin to defend ICC.

¶ 18            Subsequently, on November 19, 2013, Pekin filed a motion to reconsider requesting the

trial court to reconsider its denial of the motion for summary judgment based, in part, on this

court's recent decision in *United Contractors*, 2013 IL App (3d) 120803, issued on

September 18, 2013.  Thereafter, on February 21, 2014, the court granted Pekin's motion to

voluntarily dismiss count II.  The trial court then heard arguments concerning the motion to

---

[5]Pekin voluntarily dismissed count II of its second amended declaratory complaint on
February 21, 2014, at the start of the hearing on its motion to reconsider.

reconsider its earlier denial of counts I and III of Pekin's motion for summary judgment. The court took the matter under advisement to have an opportunity to conduct its own research with regard to the two remaining counts.

¶ 19    On May 2, 2014, the parties and the court engaged in a conference call to discuss Pekin's motion to reconsider.[6] During this conference call, the trial court indicated it obtained a copy of the underlying negligence complaint addressed in *United Contractors* to determine the applicability of those facts to the facts in the case at bar, and the trial court believed it was bound by the *United Contractors* decision. *Id.* The trial court noted that, based on *United Contractors*, it could not look at ICC's third-party complaint to satisfy the vicarious liability issue regarding Pekin's duty to defend. *Id.* The court reviewed Hanson's underlying first amended negligence complaint, and stated, "If you look at the actual allegations[,] every single one of them is directed at ICC and ICC only." The court also noted that, although paragraph seven of the underlying first amended negligence complaint indicated ICC had a direct duty and a "derivative" duty, the complaint did not say to whom that duty existed and there were no facts pled in the complaint alleging ICC was liable because of the actions of Perino. The trial court also distinguished the facts in the case at bar from the *United Contractors* case, noting the instant case involves an owner of the property, ICC, who brought contractors onto its own property to do a project while it continued its own operations. The court stated this was a premises liability issue and the underlying negligence complaint contended ICC had a duty relating to its own property, which did not confer any vicarious liability to Perino. The court found, "There's nothing in this [underlying first amended negligence] complaint that falls in to [*sic*] vicarious liability. It all falls within direct liability. That's the reason for my ruling."

---

[6]The court had a court reporter present for this conference call and the transcripts are part of the record.

¶ 20    The trial court entered a written judgment order on May 2, 2014, regarding Pekin's motion to reconsider and granted summary judgment in favor of Pekin as to count III, regarding no duty to defend ICC as an additional insured for ICC's own negligence. The order provided that Pekin had already voluntarily dismissed count II of its second amended declaratory complaint. The court reserved ruling on summary judgment regarding count I of Pekin's second amended complaint as to whether the certificate of insurance conferred any rights to ICC. The court scheduled the remaining issue for hearing on May 16, 2014.

¶ 21    On May 16, 2014, the court heard arguments concerning count I of Pekin's second amended declaratory complaint. The court found that the certificate of insurance did not confer any rights to ICC beyond the additional insured coverage outlined in the actual insurance policy. The trial court entered a written order granting summary judgment in favor of Pekin as to counts I and III, and indicated the order was a final and appealable order. ICC filed a timely notice of appeal.

¶ 22                                    ANALYSIS

¶ 23    In this case, ICC hired Perino Plumbing, Hanson's employer, to install a trash pump at ICC's business property pursuant to a written work order. While installing the trash pump, Hanson slipped and fell on a stairway resulting in his injuries. Hanson initiated a lawsuit based in negligence against the premises owner, ICC. ICC tendered its defense to Perino's insurance carrier, Pekin, on the basis that ICC was named as an additional insured under Perino's insurance policy. Pekin refused the tender of defense and filed the declaratory action at issue in this appeal.

¶ 24    For purposes of this appeal, it is undisputed that ICC was named as an additional insured in Perino's policy, and that the insurance policy excluded coverage for the additional insured

12

based on claims alleging the direct negligence of ICC. Pekin filed a declaratory action to determine coverage and the duty to defend ICC in the negligence action.

¶ 25    In the declaratory action, the trial court ultimately granted summary judgment in favor of Pekin because Hanson's underlying negligence action arose out of ICC's alleged direct negligence, thereby excluding ICC from coverage. The trial court also refused to consider the allegations contained in ICC's third-party complaint based on the recent *United Contractors* decision issued by this court. *United Contractors,* 2013 IL App (3d) 120803.

¶ 26    On appeal, ICC contends the trial court erred by granting summary judgment in favor of Pekin because Hanson's underlying negligence complaint sufficiently alleged ICC was "derivatively" liable for the conduct of Hanson's employer, Perino. In addition, ICC argues the trial court should have considered ICC's third-party complaint alleging Perino's negligent supervision of its employees in order to find the pleadings raised an issue demonstrating ICC's vicarious liability for Perino's negligence in causing Hanson's injuries.

¶ 27    In contrast, Pekin submits the trial court correctly determined that the "additional insured" language in Perino's insurance policy expressly excluded coverage for direct negligent acts or omissions by ICC. Further, on appeal, Pekin argues that our decision in *United Contractors,* (*id*.), is controlling and requires this court to affirm the trial court's ruling.

¶ 28    Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2010). We review *de novo* an order granting or denying a motion for summary judgment on the pleadings in a declaratory action. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 455 (2010); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Additionally, we review the

13

construction of the provisions of an insurance policy *de novo* as a question of law. *Wilson*, 237 Ill. 2d at 455; *United Contractors*, 2013 IL App (3d) 120803, ¶ 23.

¶ 29    It is well established, when determining an insurer's duty to defend an action, Illinois applies an "eight corners" analysis by comparing the four corners of the underlying complaint with the four corners of the insurance policy to determine whether the case falls within or potentially within coverage. *Wilson*, 237 Ill. 2d at 455; *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 36. This is only a general rule, and our supreme court has addressed exceptions to this general rule holding that the trial court should consider all relevant facts contained in the pleadings, including third-party complaints, to determine whether there is a duty to defend. *Wilson*, 237 Ill. 2d at 460-61 (quoting *American Economy Insurance Co. v. Holabird & Root,* 382 Ill. App. 3d 1017, 1031-32 (2008)). However, Illinois courts have recognized that there are limitations on whether the trial court must consider a third-party complaint when it is prepared by a putative additional insured seeking coverage under the policy. *United Contractors*, 2013 IL App (3d) 120803, ¶ 29; *National Fire Insurance of Hartford v. Walsh Construction Co.*, 392 Ill. App. 3d 312, 322 (2009); *American Economy Insurance Co. v. DePaul University,* 383 Ill. App. 3d 172, 180 (2008).

¶ 30    Here, the only written "contract" between ICC and Perino consisted of a skeletal work purchase order form prepared by ICC. The work purchase order form expressly included the following type-written provisions:

> "**ICC's insurance requirements must be met prior to beginning work and maintained throughout the job.
> **ICC insurance requirements are attached.
> **Acknowledgement of the PO and the attachment(s) must be signed, dated, and returned to ICC prior to beginning work."

The work purchase order form did not require Perino to provide a platform, scaffolding or a separate stairway to be used as part of the trash pump installation project.

¶ 31 Initially, we note that Pekin asserts that the "Certificate of Insurance" attached to Perino's insurance policy did not create additional rights for ICC. In support of this argument, Pekin points out that the certificate of insurance only named ICC as an additional insured, but expressly contained a disclaimer that the "certificate is issued as a matter of information only and confers no rights upon the certificate holder."

¶ 32 ICC claims the certificate did convey rights to coverage because the certificate was the sole document specifically naming ICC as the "additional insured" under the policy. However, the certificate included language that the insurance afforded to ICC was limited to the coverage detailed in the insurance policies described therein and was "subject to all the terms, exclusions, and conditions of such policies."

¶ 33 Courts have held that where the certificate of insurance refers to the policy and expressly disclaims coverage other than that contained in the policy itself, the policy should govern the extent and terms of coverage. *United Stationers Supply Co. v. Zurich American Insurance Co.*, 386 Ill. App. 3d 88, 102 (2008). Therefore, we conclude that the certificate of insurance itself did not confer separate or additional rights to ICC, but, pursuant to the disclaimer, limited those rights to the language contained within the four corners of Perino's insurance policy.

¶ 34 With these principles in mind, we next review the language in Perino's insurance policy and then compare the terms of the coverage to the allegations in the pleadings in the first amended complaint Hanson filed in the negligence action against ICC. The "additional insured" endorsement in Perino's policy provided that ICC, as the additional insured owner of the premises, was covered only with respect to *vicarious liability* for bodily injury or property damage attributable solely to the acts of Perino, Hanson's employer. Perino's insurance policy expressly provided that ICC was excluded from coverage for bodily injury or property damage arising out of the direct negligent acts or omissions of ICC.

15

¶ 35    Next, we compare this language to the allegations set out in the first amended negligence complaint. The first amended negligence complaint filed by Hanson and his wife alleged Hanson was injured due to the unsafe conditions pertaining to a stairway constructed and used on ICC's business premises. Specifically, the first amended negligence complaint alleged ICC "individually and through agents, servants and employees, erected, constructed, maintained, placed or operated, or caused to be erected, constructed, maintained, placed or operated, *a certain set of stairs*, to facilitate and be used in the aforesaid erection, construction, repairs, alteration, removal and/or painting." (Emphasis added.) This first amended complaint further alleged ICC was directly negligent when it "[a]llowed and permitted the premises and/or stairs to be and remain in a slippery and/or unsafe condition" and "permitted accumulation of debris and/or cement on the stairs."

¶ 36    Like the trial court, we conclude the amended complaint alleged and was based solely on the direct negligence of ICC regarding the erection, construction, placement, or operation of a stairway on ICC's commercial property and the condition of that stairway during ICC's commercial operations. However, we are also required to review the facts in all of the pleadings to determine whether those facts sufficiently alleged that ICC could be held vicariously liable for the misdeeds of Perino or Perino's employees. See *Wilson*, 237 Ill. 2d at 460-61.

¶ 37    We recognize that count II of ICC's third-party complaint alleged Perino, as Hanson's employer, failed "to provide sufficient personnel, equipment and other means necessary to accomplish the work to be performed on the premises of [ICC]." Importantly, the third-party complaint filed by ICC does not allege that Perino was required to use a separate stairway or other means of reaching the location for the trash pump installation nor does the third-party complaint allege Perino acted negligently by misusing the stairway erected and owned by ICC.

16

¶ 38    In the instant case, as in *United Contractors*, the third-party complaint filed by ICC, the additional insured, became the only pleading in Hanson's underlying negligence action alleging, in a self-serving fashion, that ICC was vicariously liable for the negligence of the policy holder, Perino. In *United Contractors*, this court found that the absence of allegations in the underlying negligence complaint against the injured worker's employer defeated the additional insured contractor's claim for insurance coverage because there were no negligent acts or omissions alleged against the named insured employer that could be imputed to the additional insured contractor giving rise to vicarious liability. *United Contractors*, 2013 IL App (3d) 120803, ¶¶ 27-28. In addition, this court found that the trial court should not consider the self-serving facts set out in a third-party complaint, filed by the additional insured contractor, as the sole basis for finding the insurance company had a duty to defend the additional insured based on a theory of vicarious liability. *Id.* ¶¶ 29-35. See also *DePaul University,* 383 Ill. App. 3d at 180 (the court refused to allow a putative additional insured to bolster its claim of coverage by referencing its own third-party complaint); *National Fire*, 392 Ill. App. 3d at 322 (the court refused to consider an additional insured's third-party complaint, filed after the declaratory relief action was filed, to add allegations missing from the original complaint in an attempt to gain coverage as the additional insured under the policy).

¶ 39    In *United Contractors*, unlike the case at bar, the general contractor, rather than the premises owner, was named as an additional insured on a subcontractor's policy based on a detailed contract. *United Contractors*, 2013 IL App (3d) 120803, ¶ 8. In spite of this significant factual distinction, we note that the language in Perino's commercial insurance policy pertaining to the "additional insured" endorsement is identical to the language we construed in the named insured's (subcontractor) insurance policy at issue in *United Contractors*. *Id.* Similarly, as in *United Contractors,* the additional insured asked the court to deny Pekin's request for

17

declaratory relief and find Pekin had a duty to defend ICC, as the additional insured, based on a theory of vicarious liability injected into the lawsuit *solely* by the additional insured's third-party complaint.

¶ 40 Based on these analogous circumstances and our holding in *United Contractors*, the trial court properly refused to consider ICC's self-serving, third-party complaint to create a duty for Pekin to defend ICC based on a theory of vicarious liability. Therefore, we conclude the trial court properly found the language of the insurance policy did not include coverage for ICC's direct negligence and correctly granted summary judgment on the pleadings in favor of Pekin on counts I and III.

¶ 41           CONCLUSION

¶ 42 For the foregoing reasons, the judgment of the circuit court of La Salle County is affirmed.

¶ 43 Affirmed.