# Illinois Official Reports

## Appellate Court

---

*Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellee, v. CENTEX HOMES, a Nevada Partnership; and CENTEX REAL ESTATE CORPORATION, Defendants-Appellants. |
| District & No. | First District, First Division<br>Docket No. 1-15-3601 |
| Filed | February 21, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CH-14633; the Hon. Neil H. Cohen, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part; and remanded with directions. |
| Counsel on Appeal | Daniel G. Wills, of Swanson, Martin & Bell, LLP, of Chicago, for appellants.<br><br>Robert Marc Chemers, Peter G. Syregelas, and Jonathan L. Federman, of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Harris and Simon concurred in the judgment and opinion. |

**OPINION**

¶ 1    The issue presented in this case is the scope of an insurer's duty to defend an additional insured in a construction accident personal injury case. Pekin Insurance Company (Pekin) issued a commercial general liability policy to McGreal Construction Company (McGreal). During the effective policy period, Scott Nowak, an employee of McGreal, was injured while working on the construction of a building owned by defendants Centex Homes and Centex Real Estate Corporation. Mr. Nowak filed the underlying personal injury lawsuit against defendants, who then tendered the defense of the underlying lawsuit to Pekin. Pekin refused to accept the tender and filed this case, seeking a declaration that defendants are not additional insureds under the Pekin policy and that, even if they are, Pekin has no duty to defend the underlying lawsuit because that underlying suit does not allege vicarious liability, a prerequisite to coverage under the policy. The circuit court granted Pekin's motion for summary judgment and denied defendants' cross-motion for summary judgment. For the following reasons, we agree with the circuit court that Centex Homes, but not Centex Real Estate, is an additional insured under the policy, but we find that Pekin does have a duty to defend Centex Homes in the underlying lawsuit. Accordingly, we reverse in part the circuit court's entry of summary judgment in favor of Pekin and remand with directions to enter summary judgment in favor of Centex Homes.

¶ 2                                    BACKGROUND
¶ 3                            A. The McGreal Contract
¶ 4    In June 2009, Centex Homes, as the "Owner," entered into a contract with McGreal, as the "Contractor" (McGreal contract), which provided that "Contractor shall maintain insurance with the minimum coverage, terms and limits provided in Exhibit A attached hereto." Exhibit A provided, in pertinent part, that McGreal's insurance would include:

> "At no expense to Owner, Additional Insured Endorsement approved by Owner naming as additional insureds with respect to both on-going and completed operations, Centex Homes *** [and] Centex Real Estate Corporation."

The contract also provided:

> "PURCHASE ORDER. If Owner elects to authorize Contractor to perform this Work, Owner will issue to Contractor one or more documents for individual lots or parcels labeled either Purchase Order or in some instances Work Order. *** Contractor's beginning of the Work is deemed Contractor's acceptance of the Contract Price and all other terms specified in the Purchase Order. Contractor has no authority to provide materials or perform work not described in the Purchase Order. Owner will not pay for any materials or work that it did not order by issuance of a Purchase Order."

The contract was signed by both the "Owner" and the "Contractor." Centex Homes was listed as the owner, and the contract indicated that the signature for Centex Homes was "By: Centex Real Estate Corporation, a Nevada Corporation, Its Managing Partner." The president of McGreal signed for the contractor.

## B. The Pekin Policy

Pekin issued a commercial general liability policy to McGreal effective September 30, 2009, through September 30, 2010 (Pekin policy). The policy contained an "additional insured" endorsement, which provided that an additional insured was "any person or organization for whom you are performing operations, when you and such person or organization have agreed in a written contract effective during the policy period *** that you must add that person or organization as an additional insured on a policy of liability insurance." The endorsement further provided that additional insureds were covered "only with respect to vicarious liability for 'bodily injury' or 'property damage' imputed from [the named insured] to the Additional Insured." The endorsement specifically excluded liability "arising out of or in any way attributable to the claimed negligence or statutory violation of the Additional Insured, other than vicarious liability which is imputed to the Additional Insured solely by virtue of the acts or omissions of the Named Insured."

## C. The Underlying Complaint

In March 2013, Mr. Nowak filed his second amended complaint against defendants in this case (underlying complaint or Nowak complaint). McGreal, which is Mr. Nowak's direct employer, is not a defendant in the underlying complaint. In his complaint, Mr. Nowak alleged that, on March 9, 2010, as a carpenter employed by McGreal, he was working on a building owned by defendants in Elgin, Illinois, for which defendants were also in charge of the erection and construction.

Mr. Nowak claimed that he was injured when he was working "on or around a balloon wall and wall bracing" and the "framed wall and its supports were caused to fall striking [Mr. Nowak]." Mr. Nowak further alleged:

"3. That *** the Defendants, individually and through their agents, servants and/or employees, were present during the course of such erection and construction. The Defendants participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in scheduling of the work and the inspection of the work. In addition thereto, at that time and place, the Defendants had the authority to stop the work, refuse the work and materials and order changes in the work.

4. That it was, therefore, the duty of the Defendants to operate, manage, supervise and control the said construction site and activities thereon, in a reasonably safe and proper manner for workmen engaged thereon, in particular, the Plaintiff.

* * *

7. Notwithstanding their duty, at said time and place, the Defendants, by and through their agents, servants and employees, then and there committed of [*sic*] one or more of the following careless and negligent acts and/or omissions:

(a) Failed to make a reasonable inspection of the premises and the work being done thereon, when the Defendant(s) knew, or in the exercise of ordinary care should have known, that said inspection was necessary to prevent injury to the Plaintiff;

- 3 -

(b) Improperly operated, managed, maintained and controlled the aforesaid premises and work, so that as a direct and proximate result thereof, the Plaintiff was injured;

(c) Failed to provide the Plaintiff with a safe place within which to work;

(d) Failed to warn the Plaintiff of the dangerous conditions then and there existing when the Defendant(s) knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff;

(e) Failed to provide adequate safeguards to prevent the Plaintiff from injury while lawfully upon said premises, to wit: failed to provide or require that proper equipment and man power be provided to erect a large balloon wall;

(f) Failed to supervise the work being done on the aforesaid premises.

(g) Failed to properly control and supervise the work of its subcontractor, McGreal Construction, in the erection of the building and in particular the balloon wall referred to in the Complaint."

¶ 10                              D. The Declaratory Judgment Action

¶ 11    Pekin filed this declaratory judgment action on June 13, 2013, seeking a declaration that it had no duty to defend either Centex Real Estate or Centex Homes on the Nowak complaint. Pekin alleged that (1) McGreal had no written contract with Centex Real Estate, a prerequisite to becoming an additional insured under the policy, and (2) because Centex Homes did not issue a purchase order to McGreal for performance of the work alleged to have been the cause of Mr. Nowak's injury in the underlying complaint, "McGreal was not performing work or operations pursuant to the terms and conditions of the [McGreal contract]" and, as a result, Centex Homes was also not covered as an additional insured.

¶ 12    Pekin also alleged that, even if one or both of the defendants were "additional insureds," it still had no duty to defend them in the underlying lawsuit because, pursuant to the policy, Pekin only had a duty to defend an additional insured when the additional insured's liability was based on its vicarious liability for a negligent act or omission of the named insured, rather than the additional insured's direct negligence. Pekin alleged that the Nowak complaint was based on defendants' "own negligent conduct and not for damages based on vicarious liability for the acts or omissions of McGreal."

¶ 13    Defendants filed a counterclaim, and the parties filed cross-motions for summary judgment. On November 24, 2015, the circuit court ruled that (1) Centex Real Estate was not an additional insured pursuant to the Pekin policy, (2) Centex Homes was an additional insured pursuant to the Pekin policy, and (3) Pekin did not owe Centex Homes a duty to defend the underlying lawsuit because the underlying lawsuit alleged only the direct, and not vicarious, liability of Centex Homes.

¶ 14                                          JURISIDICTION

¶ 15    Defendants timely filed their notice of appeal on December 21, 2015. This court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

ANALYSIS

There are two issues before us on appeal: (1) whether Centex Real Estate and Centex Homes are additional insureds pursuant to the Pekin policy and (2) if so, whether Pekin has a duty to defend them in the underlying lawsuit. Defendants argue that the circuit court erred in granting summary judgment to Pekin because both Centex Real Estate and Centex Homes are additional insureds pursuant to the Pekin policy and because Pekin owes both defendants a duty to defend in the underlying lawsuit. In response, Pekin claims that defendants are not additional insureds and, even if they could be considered additional insureds, Pekin still does not owe them a duty to defend because the underlying lawsuit does not allege a basis for defendants' vicarious liability for McGreal's conduct.

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007). Where cross-motions for summary judgment are filed by the parties, they agree that no issues of fact exist and that the disposition of the case turns on the resolution of purely legal issues. *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 432 (2010). A circuit court's ruling on a motion for summary judgment is reviewed *de novo*. *A.B.A.T.E. of Illinois, Inc. v. Quinn*, 2011 IL 110611, ¶ 22. We will address the two issues in turn.

## A. Who Is An Additional Insured

It is clear that Pekin only has a potential duty to defend defendants if they are additional insureds pursuant to the Pekin policy. Therefore, we must first consider whether either defendant falls under the definition of an "additional insured."

## 1. Centex Real Estate Is Not an Additional Insured

The circuit court ruled that Centex Real Estate is not an additional insured because it was not a signatory to the McGreal contract. The Pekin policy only provides coverage for persons or organizations with whom McGreal had "a written contract effective during the policy period." Here, Centex Real Estate signed the contract but only as the managing partner of Centex Homes.

Defendants argue that Centex Real Estate qualifies as an additional insured because it was a "signatory" to the McGreal contract. As Pekin points out, however, a "signatory" is defined as a "person or entity that signs a document, personally or *through an agent*, and thereby becomes a party to an agreement." (Emphasis added.) Black's Law Dictionary (10th ed. 2014). "It is well established that an agent of a disclosed principal is not individually or personally bound by the terms of the contract which he executes on behalf of the principal, where the agency relationship is known to the other party at the time of contracting ***." *Yellow Book Sales & Distribution Co. v. Feldman*, 2012 IL App (1st) 120069, ¶ 38; see also *Water Tower Realty Co. v. Fordham 25 E. Superior, L.L.C.*, 404 Ill. App. 3d 658, 666-67 (2010) (noting that, in Illinois, where "[t]he principal's name [is] followed by the agent's name [and] preceded by a preposition such as 'by' or 'per,' " an inference is created that "the principal and not the agent is a party" to the contract (internal quotation marks omitted)). In other words, and as the circuit court observed in the present case, "[w]here an agent signs a contract for a disclosed principal, the agent is not a party to the contract."

¶ 24    The record shows that Centex Real Estate signed the McGreal contract on behalf of Centex Homes as its "managing partner." Because Centex Real Estate merely signed the contract as a representative or agent of its principal, Centex Homes was the signatory and the only party to the written contract with McGreal. We further note that the contract specifically provides that the agreement was made between McGreal and Centex Homes.

¶ 25    Defendants make two additional arguments for the first time in their reply brief. Generally, points that are not argued in an appellant's opening brief are forfeited "and shall not be raised in the reply brief." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). However, even if defendants had not forfeited these arguments, we find them to be without merit.

¶ 26    First, defendants argue that Centex Real Estate is an additional insured because "Centex Homes is a general partnership of which Centex Real Estate is managing partner." Defendants point to a provision in the Pekin policy that defines an additional insured as any "person or organization for whom you are performing operations." Defendants argue that, because Centex Real Estate and Centex Homes are "part of the same 'organization,' " *i.e.*, the general partnership, Centex Real Estate must be an additional insured.

¶ 27    We reject this argument. Although the Pekin policy includes "organization" as part of its definition of an additional insured, it further provides that such an organization is an additional insured only when McGreal and that organization "have agreed in a written contract effective during the policy period." As we just discussed, McGreal had a written contract only with Centex Homes.

¶ 28    Second, defendants argue that, in the McGreal contract, McGreal agreed to indemnify "each 'Centex Party' " which the contract defined as the "Owner" and "partners *** of the Owner." However, even if the McGreal contract required coverage for Centex Real Estate, the Pekin policy only covers parties as additional insureds if McGreal had a written contract with them and that contract required that the party be covered as an additional insured. Even if the contract with Centex Homes required McGreal to add Centex Real Estate as an additional insured, the contract was still with Centex Homes.

¶ 29                    2. Centex Homes Is an Additional Insured

¶ 30    The circuit court ruled that Centex Homes is an additional insured, rejecting Pekin's argument that the McGreal contract only became effective if a purchase order was issued. Pekin relies on the contract provision stating that Centex Homes would issue a purchase order to McGreal if it "elected to authorize [McGreal] to perform" work, and that McGreal had "no authority to provide materials or perform work not described" in the purchase order. Pekin claims that, pursuant to this provision, McGreal could only have had an effective written agreement with Centex Homes if Centex Homes had issued a purchase order and, because no purchase order was issued for the work that was the alleged cause of Mr. Nowak's injury in the underlying lawsuit, McGreal and Centex Homes had no effective written agreement.

¶ 31    We agree with the circuit court, however, that although the McGreal contract "did contemplate the issuance of purchase orders, nothing in the [McGreal contract] provides that [it] is not a valid agreement in the absence of a purchase order." All that was necessary under the policy was a contract with the putative insured that required adding that party as an additional insured. The purchase order was not a condition precedent to there being an effective contract as evidenced by the parties' actual performance under the contract. See *Cathay Bank v. Accetturo*, 2016 IL App (1st) 152783, ¶ 32 (defining a "condition precedent"

as "an act that must be performed or an event that must occur before a contract becomes effective or before one party to an existing contract is obligated to perform").

¶ 32    As we find that Centex Homes is an additional insured pursuant to the Pekin policy, we must determine whether Pekin has a duty to defend Centex Homes under the policy.

¶ 33                         B. Whether Pekin Has a Duty to Defend

¶ 34    The scope of an insurer's duty to defend an additional insured under a policy issued to a named insured is a reoccurring issue in construction coverage cases. General principles of insurance coverage apply to this scenario. The insurer's duty to defend is broader than its duty to indemnify. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125 (1992). Generally, when determining whether an insurer has a duty to defend, a court "must compare the allegations in the underlying complaint to the policy language." *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154-55 (2005). "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." *Id.* at 154. "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Id.* at 155. In making this determination, "[t]he allegations in the underlying complaint must be liberally construed in favor of the insured." *Id.* Where the facts alleged support multiple theories of recovery, there is a duty to defend if any one of those theories potentially falls within policy coverage. *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 363 (2006). It is "the alleged conduct, rather than the labeling of the claim in the complaint, [that] determines whether the insurer has a duty to defend." *Pekin Insurance Co. v. Roszak/ADC, LLC*, 402 Ill. App. 3d 1055, 1059 (2010).

¶ 35    In certain circumstances, the court may look beyond the underlying complaint in order to determine whether an insurer has a duty to defend. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 459 (2010). Thus, we have recognized that it may be appropriate to consider the written agreements between the named insured and the additional insured in determining whether the insurer has a duty to defend an additional insured. *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, ¶ 48.

¶ 36    One fact that is common in almost all of these construction cases is that the Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) gives tort immunity to the injured worker's direct employer, thereby barring the injured worker from bringing a personal injury complaint against his or her employer. *American Country Insurance Co. v. James McHugh Construction Co.*, 344 Ill. App. 3d 960, 963 (2003). As a result, the direct employer, who is generally the named insured, is not typically a named defendant in the underlying case. As the Third Circuit Court of Appeals recently recognized, even under Pennsylvania's strict rule against considering facts that are not in the underlying complaint, the allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer. *Ramara, Inc. v. Westfield Insurance Co.*, 814 F.3d 660, 677-79 (3d Cir. 2016).

¶ 37    In order to find that an insurer owes a duty to defend an additional insured based on that additional insured's potential vicarious liability, two components must be present. First, there must be a potential for finding that the named insured was negligent, and second, there must be

a potential for holding the additional insured vicariously liable for that negligence. If the allegations in the underlying complaint do not sufficiently suggest the former, there is no need to reach the latter.

¶ 38 We recently held that, in order to meet the first requirement, the underlying complaint need not expressly allege that the named insured was negligent. *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 50. Indeed, as the Third Circuit noted in *Ramara*, "silen[ce] as to any acts or omissions" by the named insured must be understood as the possible result of tort immunity for employers under the workers' compensation laws and should not be a basis for refusing to defend an additional insured. *Ramara*, 814 F.3d at 677-78.

¶ 39 In *CSR Roofing*, we found that Pekin had a duty to defend the additional insured in that case "[a]lthough the elements of a negligence claim were not specifically alleged against [the named insured]" because "the amended complaint suggest[ed] that [the named insured's] acts or omissions were an underlying cause of [the underlying plaintiff's] injuries." *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 50. Instead of requiring explicit allegations of negligence by the named insured, we found it sufficient that the underlying complaint contained facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured. *Id.* ¶¶ 50, 54.

¶ 40 As we recognized in *CSR Roofing*, the test used in that case is consistent with the result, if not the analysis, in *Pekin Insurance Co. v. United Contractors Midwest, Inc.*, 2013 IL App (3d) 120803, a case relied on by Pekin here. *CSR Roofing*, 2015 IL App (1st) 142473, ¶¶ 52-54. In *United Contractors Midwest*, the court found that Pekin had no duty to defend an additional insured in a construction case because the underlying complaint did not identify a negligent act of the named insured. *United Contractors Midwest*, 2013 IL App (3d) 120803, ¶ 28. However, the allegations of the underlying complaint in that case focused entirely on the additional insured's own negligence in failing to supervise or warn persons working on the construction site that there were live overhead power lines, which ultimately caused the worker's injury. *Id.* ¶ 10. None of the allegations supported a theory of recovery based on negligence of the named insured or even suggested negligence by the named insured. *Id.* Accordingly, the outcome in *United Contractors Midwest*, finding no duty to defend, is consistent with the outcome in *CSR Roofing*, finding a duty to defend, because in *CSR Roofing* the underlying complaint *did* contain "allegations suggesting potential negligence" by the named insured and facts to support a theory of recovery based on negligence by the named insured. *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 54.

¶ 41 The holding and analysis of *CSR Roofing* is also consistent with the results in two additional cases that Pekin relies on here, in which we found that the underlying complaint failed to sufficiently allege that the named insured was negligent: *Pekin Insurance Co. v. Illinois Cement Co.*, 2016 IL App (3d) 140469, and *Pekin Insurance Co. v. United Parcel Service, Inc.*, 381 Ill. App. 3d 98, 104 (2008). In *Illinois Cement*, the underlying complaint alleged that the *additional insured* "constructed, maintained, placed or operated, or caused to be erected, constructed, maintained, placed or operated, a certain set of stairs," and that the stairs were defective and caused the injury. (Internal quotation marks omitted.) *Illinois Cement*, 2016 IL App (3d) 140469, ¶ 11. Similarly, in *United Parcel Service*, the allegations of the underlying complaint focused on the defective ladder that was supplied by the *additional insured*. *United Parcel Service*, 381 Ill. App. 3d at 98-99. In neither case did the underlying complaint allege facts supporting a theory of recovery for the underlying plaintiff based on

negligence of the named insured. Thus, the holdings in those cases are consistent with *CSR Roofing*.

¶ 42 We acknowledge that one of the cases Pekin relies on here, *Pekin Insurance Co. v. Beu*, 376 Ill. App. 3d 294 (2007), cannot be harmonized with the holding in *CSR Roofing*. In *Beu*, the court held that "since the allegations in [the underlying] complaint were not based solely on the acts or omissions of the named insured, but also were predicated on the additional insured's alleged independent acts of negligence, [the] plaintiff [had] no duty to defend the additional insured." *Beu*, 376 Ill. App. 3d at 297. However, our supreme court has made it clear that where there are multiple potential bases for liability "the duty to defend arises even if only one such theory is within the potential coverage of the policy." *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73 (1991). See also *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 49 ("The mere fact that allegations of direct liability are included in the complaint, however, does not defeat [the additional insured's] claim that it could also potentially be held vicariously liable ***."); *Pekin Insurance Co. v. Pulte Home Corp.*, 404 Ill. App. 3d 336, 342 (2010) ("We agree with Pekin that pursuant to the allegations in the underlying complaint, [the additional insured] might be found independently liable to [the underlying plaintiff], but those allegations do not preclude the possibility that [the additional insured] could be found liable solely as a result of the acts or omissions of *** the named insured.").

¶ 43 Applying the *CSR Roofing* test to the allegations in this case is straightforward. The question is whether the Nowak complaint alleges facts to support a theory of recovery under which McGreal's acts or omissions were the cause of Mr. Nowak's injuries. See *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 50. The answer, clearly, is yes. The underlying complaint alleges that it was the named insured, McGreal, who was charged with "the erection of *** a balloon wall." The complaint further alleges that Mr. Nowak was working as a carpenter for McGreal "on or around a balloon wall and wall bracing" when the "framed wall and its supports were caused to fall striking" him. The underlying complaint makes clear that McGreal was the party responsible for building the balloon wall and that Mr. Nowak was injured when the wall fell and struck him. It makes no difference that the underlying complaint in this case could also support a theory of direct liability against Centex Homes or that there are no direct allegations against McGreal. Under the test the court used in *CSR Roofing*, the underlying complaint sufficiently alleges facts to support a theory of recovery for the underlying plaintiff based on the negligence of the named insured.

¶ 44 Because we have found that the allegations in the underlying complaint sufficiently support a claim of negligence by the named insured, we must proceed to the second inquiry: whether there is any potential that Centex Homes, as an additional insured, would be vicariously liable for that negligence.

¶ 45 Some of our cases that have wrestled with this issue have examined the underlying complaint in some detail to determine whether it alleged sufficient specific indicia of control by the additional insured over the named insured to suggest a relationship whereby the additional insured would have vicarious liability for negligent actions of the named insured. Those cases have usually relied on section 414 of the Restatement (Second) of Torts in this examination. See, *e.g.*, *Roszak*, 402 Ill. App. 3d at 1064-66; *Pekin Insurance Co. v. Hallmark Homes, L.L.C.*, 392 Ill. App. 3d 589, 590-95 (2009); *United Parcel Service*, 381 Ill. App. 3d at 105-07.

¶ 46    Section 414 is titled "Negligence in Exercising Control Retained by Employer" and provides:

> "One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care." Restatement (Second) of Torts § 414 (1965).

¶ 47    The cases cited above have also looked to comments a and c to section 414, which provide:

> "*a*. If the employer of an independent contractor retains control over the operative detail of doing any part of the work, he is subject to liability for the negligence of the employees of the contractor engaged therein, under the rules of that part of the law of Agency which deals with the relation of master and servant. The employer may, however, retain a control less than that which is necessary to subject him to liability as master. He may retain only the power to direct the order in which the work shall be done, or to forbid its being done in a manner likely to be dangerous to himself or others. Such a supervisory control may not subject him to liability under the principles of Agency, but he may be liable under the rule stated in this Section unless he exercises his supervisory control with reasonable care so as to prevent the work which he has ordered to be done from causing injury to others.

> ***

> *c*. In order for the rule stated in this Section to apply, the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way." *Id.* § 414 cmts. a, c, at 388-89.

¶ 48    Our supreme court made clear recently, in *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶¶ 36-38, that except for the reference to "control over the operative detail of doing any part of the work" (internal quotation marks omitted), which would subject a party to vicarious liability for work performed by others under the law of agency, section 414 deals with direct, not vicarious, liability:

> "The rule set forth in section 414, however, articulates a basis only for imposition of direct liability. Because an employer of an independent contractor is typically not answerable for the contractor's negligence, 'the employer's liability must be based upon *his own personal negligence*.' *** Restatement (Second) of Torts, Ch. 15, Topic 1, Introductory Note, at 371 (1965). Section 414 sets forth one way in which an employer of an independent contractor may be negligent and, thus, directly liable for physical harm to others. *Id.* (citing *id.* § 414).

> ***

> *** If the control retained by the employer is such that it gives rise to a master-servant relationship, thus negating the person's status as an independent

contractor, the employer may be liable for the negligence of the contractor's employees under the law of agency. Agency law, under which an employer may be vicariously liable for the torts of its employees, is distinct from the principles encompassed in section 414, under which an employer is directly liable for its own negligence. In short, 'section 414 takes over where agency law ends.' " (Emphasis in original.)

¶ 49    Our precedent on this issue, in addition to resting at least in part on what our supreme court has indicated is a misunderstanding of section 414, has often been inconsistent. For example, in *Roszak*, 402 Ill. App. 3d at 1067, our court examined the same specific allegations about the amount of control exercised by the additional insured over the named insured as the Second District analyzed in *Hallmark Homes*, 392 Ill. App. 3d at 594, but disagreed with the *Hallmark Homes* court's conclusion that the underlying complaint alleged facts suggesting that the additional insured retained "sufficient control so as to be vicariously liable for the subcontractor's negligence." *Roszak*, 402 Ill. App. 3d at 1067. Then, in *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales Inc.*, 2013 IL App (1st) 120735, the court acknowledged that the allegations about the additional insured's control over the named insured in the underlying complaint before it were "almost identical to the allegations within *Roszak*," where the court found no potential vicarious liability and thus no duty to defend (*id.* ¶ 22), but nonetheless found a duty to defend (*id.* ¶ 26).

¶ 50    Our decision in *CSR Roofing*, relying in part on our earlier decision in *Illinois Emcasco*, simply declined to engage in any analysis pursuant to section 414. *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 55. The court in *CSR Roofing* noted that the question before it was whether an insurer had a duty to defend the additional insured " 'because it could *potentially* be found vicariously liable for' " the underlying plaintiff's injuries. (Emphasis in original.) *Id.* (quoting *Illinois Emcasco*, 2013 IL App (1st) 120735, ¶ 22). Once the *CSR Roofing* court determined that the underlying complaint contained sufficient allegations to suggest negligence by the named insured, the court asked only whether it could eliminate the possibility that the additional insured could be held vicariously liable for that negligence. *Id.* ¶¶ 50-51. In *Illinois Emcasco*, 2013 IL App (1st) 120735, ¶ 22, the court noted that, "at this juncture, the question is not whether [the additional insured] is vicariously liable. Rather, the issue is whether [the insurer] has a duty to defend [the additional insured] because it could *potentially* be found vicariously liable for [the underlying plaintiff's] injuries." (Emphasis in original.) The court then found "potential" for vicarious liability because the complaint alleged that the additional insured acted "by and through its agents, servants and employees" and there was alleged negligence by the named insured, which "at least [implied] that [the named insured] may be one of those 'agents, servants and employees.' " *Id.* ¶ 23.

¶ 51    The courts in both *CSR Roofing* and *Illinois Emcasco* assumed that section 414 defined vicarious liability in the context of coverage for an additional insured but refused to examine the allegations of the underlying complaint to see if those allegations demonstrated sufficient control by the additional insured over the named insured to support vicarious liability under section 414. *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 55; *Illinois Emcasco*, 2013 IL App (1st) 120735, ¶ 22. The *CSR Roofing* court expressly declined to determine the applicability of section 414 because it "may tend to determine an issue crucial to the determination of the underlying lawsuit." *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 55. We believe that the approach taken in *CSR Roofing* and *Illinois Emcasco*, of not parsing the underlying complaint

for allegations of a specific amount or level or type of control by the additional insured over the named insured, is the correct one for a number of reasons.

¶ 52    First, this approach is consistent with well-settled principles differentiating an insurer's broad duty to defend from the far narrower duty to indemnify. The insurer has a duty to defend even if the facts alleged in the underlying complaint only "fall potentially within the policy's coverage." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 398 (1993). In contrast, the duty to indemnify "arises only if the facts alleged *actually* fall within coverage." (Emphasis in original.) *Id.* Because at the duty to defend stage our courts only consider whether the allegations of control could *potentially* give rise to vicarious liability, more general allegations should be sufficient so long as they do not eliminate any possibility of vicarious liability.

¶ 53    Second, as the court recognized in *CSR Roofing*, the coverage determination must be made without deciding any significant issues in the underlying case. *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 55. Defining the level of control that the additional insured had over the alleged negligent conduct of the named insured will most likely be a significant issue in the underlying case. It should therefore not be a determination made by the court deciding whether there is insurance coverage.

¶ 54    Third, the same kind of allegations that would support direct liability under section 414 also support vicarious liability under the laws of agency. As our supreme court explained in *Carney*, direct liability under section 414 "takes over where agency law ends." (Internal quotation marks omitted.) *Carney*, 2016 IL 118984, ¶ 38. Thus, there is a continuum with respect to the relationship between the control an additional insured exercises over the work of a named insured and the type of liability an additional insured may have: a certain amount of control over the work of the named insured will result in direct liability, greater control over "operative detail" could properly result in vicarious liability, and a lesser amount of control could give rise to no liability at all. The inherent difficulty in deciding where, on this continuum, a particular relationship lies may explain the inconsistent results outlined above. In any event, the allegations of the underlying complaint, even where detailed, are unlikely to assist in the making of this decision.

¶ 55    Fourth, even a cursory review of recent cases confirms that vicarious liability has been imposed on general contractors or owners for the negligence of subcontractors based on allegations similar to the boiler plate allegations that are present in the Nowak complaint. For example, in *Ramirez v. FCL Builders, Inc.*, 2014 IL App (1st) 123663, this court found that an employee of a roofing subcontractor had a basis for imposing vicarious—as well as direct—liability on the general contractor, upholding a $1.588 million jury verdict against the general contractor. *Id.* ¶¶ 1, 124-48. The allegations in that case included that the general contractor " 'was present during the course of the construction project, supervised and coordinated the work being done, designated various work methods, maintained and checked work progress, and participated in scheduling the work and the inspection thereof,' " and " 'had the authority to stop the work, refuse the work, tools and materials, and to order changes in the work in the event that the work was being performed in a dangerous manner or for any other reason.' " *Id.* ¶ 4. Those allegations track almost word for word the allegations in the Nowak complaint. See *supra* ¶ 9; see also *Fleck v. W.E. O'Neil Construction Co.*, 2016 IL App (1st) 151108-U, ¶¶ 50-58 (an unpublished order we cite as an example rather than as precedential authority, in which the court relied on the same evidence to sustain a finding of

both direct and vicarious liability against a general contractor for injury to a subcontractor's employee based on the general contractor's "retained control" over the subcontractor's work).

¶ 56    Finally, it can be assumed that, as was true in this case, the underlying complaint will offer little real guidance on the issue of vicarious liability. The plaintiff in the underlying case will know that he or she was injured and, perhaps, how that injury occurred. Thus, whether there is a basis for finding that the injury was caused by negligence on the part of the named insured should be determinable from the face of the underlying complaint. However, the underlying plaintiff will likely have no knowledge as to what relationship or degree of control exists between the additional insured and the named insured. As a result, the underlying complaint will likely contain boilerplate language similar to the language in this case, and indeed in most of the cases cited by the parties, about participation "in coordinating the work being done," designating "various work methods," maintaining and checking "work progress," and participating "in scheduling of the work and the inspection of the work." Is this control over the operative detail? Is it supervisory control? Or is it not legally significant control at all? As our supreme court made clear, an insurer owes a duty to defend if the claim is "potentially within policy coverage." *General Agents Insurance*, 215 Ill. 2d at 155. Accordingly, where the complaint alleges that the additional insured had control of operations and was liable for the actions of its agents, there is a "potential" basis for vicarious liability.

¶ 57    Application of these principles to this case is straightforward. The underlying complaint alleges that defendants are liable because of conduct they took "by and through their agents, servants and employees" and also alleges that defendants "participated in coordinating the work being done and designated various work methods," had the duty to "operate, manage, supervise and control" the construction site and activities, and more specifically, "[f]ailed to properly control and supervise the work of its subcontractor, McGreal Construction, in the erection of the building and in particular the balloon wall referred to in the Complaint." The potential exists, consistent with these allegations, that a jury could find that McGreal was negligent in the erection of the balloon wall, that Centex Homes retained sufficient operative control over that element of construction such that McGreal was its agent, and that therefore Centex Homes was vicariously liable for the negligence of its agent. It does not matter whether this is likely; it is a potentiality. As such, Pekin owes Centex Homes a duty to defend in the underlying lawsuit.

¶ 58                                    CONCLUSION

¶ 59    In summary, we agree with the circuit court's findings that Centex Homes, and not Centex Real Estate, is an additional insured. However, we find that the circuit court erred in concluding that Pekin has no duty to defend Centex Homes and further find that its grant of summary judgment in favor of Pekin on that basis was in error.

¶ 60    Accordingly, we reverse the circuit court's grant of summary judgment in favor of Pekin and against Centex Homes, and remand for the circuit court to enter summary judgment in favor of Centex Homes. The circuit court's order granting Pekin summary judgment as to Centex Real Estate may stand.

¶ 61    Affirmed in part; reversed in part; and remanded with directions.