# Illinois Official Reports

## Appellate Court

---

**_Pekin Insurance Co. v. Lexington Station, LLC_, 2017 IL App (1st) 163284**

---

| | |
|---|---|
| Appellate Court Caption | PEKIN INSURANCE COMPANY, Plaintiff-Appellant, v. LEXINGTON STATION, LLC, an Illinois Limited Liability Company; and MARCOS BOTELLO, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-16-3284 |
| Filed | August 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 15-CH-1660; the Hon. David B. Atkins, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Robert Marc Chemers, Heather E. Plunkett, and Paula K. Villela, of Pretzel & Stouffer, Chtrd., of Chicago, for appellant.<br><br>Christopher J. Pickett and Amy E. Johnson, of Rappaport & Postel, LLC, of Chicago, for appellees. |
| Panel | JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Presiding Justice Connors and Justice Harris concurred in the judgment and opinion. |

**OPINION**

¶ 1    This is a declaratory judgment action filed by plaintiff Pekin Insurance Company (Pekin), seeking a declaration that it owes defendant Lexington Station, LLC (Lexington), no duty to defend in a personal injury lawsuit filed by Marcos Botello against Lexington. Pekin issued a commercial general liability (CGL) policy to ACC, Inc. (ACC). Defendant Marcos Botello was injured during the effective policy period, while working as an employee of ACC, on a development project owned by Lexington. Mr. Botello filed a personal injury lawsuit against Lexington. Lexington tendered defense of that action to Pekin. Pekin refused the tender, then filed this action, arguing it had no duty to defend Lexington as an additional insured under the policy issued to ACC.

¶ 2    Westfield Insurance Company (Westfield), as Lexington's own CGL insurer, intervened in the declaratory action and argued, along with Lexington, that Pekin did owe a duty to defend. The circuit court denied Pekin's motion for summary judgment and granted Lexington and Westfield's cross-motion for judgment on the pleadings, finding that Pekin had a duty to defend Lexington.

¶ 3    On appeal, Pekin argues that the court's entry of judgment in favor of Lexington and Westfield was in error because (1) Mr. Botello's complaint did not contain allegations that created a potential for a claim of vicarious liability against Lexington and (2) the circuit court improperly considered a third-party complaint in coming to its conclusion. For the following reasons, we affirm the judgment of the circuit court.

¶ 4                                    BACKGROUND
¶ 5                          A. The ACC Construction Agreement
¶ 6    In September 2014, Lexington, as the "Owner," entered into a contract with ACC, as the "Contractor" (ACC construction agreement), for carpentry services in connection with the development of a property in Morton Grove, Illinois. The ACC construction agreement, which was attached to the complaint for declaratory judgment, provided that ACC was an independent contractor and required ACC to "perform and pay for all" of the contract work. The ACC construction agreement defined that contract work to include a broad scope of carpentry work on the Morton Grove development. The ACC construction agreement included the requirement that ACC supply and install a broad range of equipment to do that work, specifically including "[h]oisting and erection equipment." The ACC construction agreement also provided:

> "A. Contractor shall initiate, maintain and supervise all safety and hazard communication precautions and programs (collectively, the 'Programs'). *** The programs shall cover specifically and Contractor and each subcontractor shall take all reasonable precautions for the safety of and shall provide all reasonable protection to prevent damage, injury or loss to the following:
>
>> (1) All employees performing all or any portion of the Work and all other persons who may be affected thereby;
>
> * * *

B. Contractor shall erect and maintain, as required by existing conditions and progress of the Work, all reasonable, necessary or appropriate safeguards for safety and protection ***.

* * *

H. Notwithstanding anything in the Contract Documents to the contrary, Owner shall have no responsibility or obligation in connection with safety or the construction means, methods, techniques or procedures in connection with the Work or the acts or omissions of Contractor ***."

The construction agreement further provided that all "material and workmanship *** shall be subject to inspection, examination and testing by Owner at any and all times."

## B. The Pekin Policy

The ACC construction agreement provided that ACC, "at its own expense, shall carry at all times prior to completion of the work and acceptance by the Owner of the work, the Insurance as set forth in the Schedule of Insurance attached hereto and make a part thereof as Exhibit 'D.' " Exhibit D provided that ACC's insurance policy "must include" an "additional insured" endorsement, naming Lexington as its additional insured.

Pekin issued a CGL policy to ACC effective July 1, 2014, to July 1, 2015. The policy contained an "additional insured" endorsement that defined an additional insured as "any person or organization for whom you are performing operations, when you and such person or organization have agreed in a written contract effective during the policy period *** that you must add that person or organization as an additional insured on a policy of liability insurance." The endorsement stated that the additional insured was covered by the policy "only with respect to vicarious liability for 'bodily injury' *** imputed from [the named insured] to the Additional Insured." The endorsement specifically excluded coverage for liability "arising out of or in any way attributable to the claimed negligence *** of the Additional Insured, other than vicarious liability which is imputed to the Additional Insured solely by virtue of the acts or omissions of the Named Insured."

## C. The Underlying Complaint

Mr. Botello filed his first amended complaint against Lexington (underlying complaint or Botello complaint) in August 2015, alleging claims of construction negligence, premises liability, and direct negligence. ACC, Mr. Botello's employer, was not named as a defendant in the action. In his complaint, Mr. Botello alleged that in March 2015, Lexington owned the Morton Grove property; was in charge of the property's "erection, construction, repairs, and maintenance"; and controlled the property "both directly and indirectly, individually and through its agents, servants and employees." Mr. Botello alleged that Lexington had entered into an agreement with ACC for carpentry work to be performed on a construction project at the property. The complaint alleged that Mr. Botello was employed as a carpenter by ACC and that Lexington, "individually and by and through its agents, servants and employees" was guilty of a variety of careless and negligent acts, including a failure to "provide proper equipment" and "to erect, construct place or operate" or cause to be erected, constructed, or operated "a safe, suitable and proper hoist, lift, ladder, stand, scaffold or tie off to facilitate and be used in the said erection, construction repair, alteration, removal and/or painting."

¶ 12    Mr. Botello alleged:

> "[Lexington] participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in scheduling of the work and inspection of the work. In addition, at the time and place, [Lexington] had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason."

Mr. Botello also alleged that Lexington, "through its agents," "[i]mproperly operated, managed, maintained and controlled the premises," and "[f]ailed to supervise the work being done."

¶ 13    Mr. Botello alleged that, on March 24, 2015, he was standing on a ladder, working "at heights in excess of 20 feet" "without tie-off, without a proper lift, hoist, ladder, scaffold, or stand, when he fell a significant distance to the ground below" from the ladder, causing his injury. According to Mr. Botello, "as a direct and proximate result of one or more of the aforesaid careless and negligent acts [or] omissions of [Lexington], [Mr. Botello] sustained severe and permanent injuries, both externally and internally."

¶ 14                            D. The Declaratory Judgment Action

¶ 15    Pekin filed this complaint for declaratory judgment on November 12, 2015, against both Lexington and Mr. Botello, seeking a declaration that it had no duty to defend Lexington in the Botello action. Pekin alleged that it owed Lexington no such duty because Lexington was being sued for its own negligence, and direct negligence of the additional insured was specifically excluded by the policy.

¶ 16    On May 10, 2016, Lexington and Westfield filed a motion for judgment on the pleadings pursuant to section 2-615(e) of the Code of Civil Procedure (735 ILCS 5/2-615(e) (West 2016)). Lexington and Westfield argued that Pekin owed a duty to defend Lexington in the Botello action because, "under the controlling law set forth in *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, [the Botello] complaint *does* create a potential that [Lexington] will be held vicariously liable for ACC's conduct." (Emphasis in original.) Lexington and Westfield also attached a third-party complaint filed by Lexington in the Botello action, alleging that ACC's negligent acts and omissions were the cause of Mr. Botello's injuries and seeking contribution from ACC on that basis. Lexington and Westfield argued that the circuit court could consider the third-party complaint as "further evidence" that Mr. Botello's allegations—referring to Lexington acting "by and through its agents"—were actually referring to acts or omissions of ACC and that, therefore, there was a potential to find Lexington vicariously liable for ACC's negligence, bringing Lexington within the Pekin policy's coverage.

¶ 17    On June 8, 2016, Pekin filed a cross-motion for summary judgment against Lexington and Westfield pursuant to section 2-1005(a) of the Code of Civil Procedure (735 ILCS 5/2-1005(a) (2016)). Pekin argued that there was "no possibility based on the underlying allegations that Lexington w[ould] be vicariously liable for ACC's conduct." Pekin also argued that the third-party complaint could not be considered because it was "the only pleading [that] contain[ed] any allegations of negligence by ACC, rather than Lexington itself," and it was therefore "entirely self-serving" and was only filed as an improper attempt to bring the underlying complaint within coverage.

¶ 18    On November 17, 2016, after full briefing on both motions, the circuit court granted Lexington and Westfield's motion on the pleadings and denied Pekin's motion for summary judgment. The court found that Pekin did have a duty to defend Lexington as an additional insured and that the case before it was very similar to the facts in *CSR Roofing*, which the court found was "particularly instructive." As to whether it could consider Lexington's third-party complaint against ACC, the court rejected Pekin's argument that it was required to ignore the third-party complaint because it was merely "self-serving," but also concluded that, even if it did not consider the third-party complaint, it would find a duty to defend. The court ordered Pekin to defend Lexington in the Botello action, to reimburse Lexington and Westfield "for any reasonable costs and fees incurred in defense of the Botello Case as of the date of this Order," and to "pay for their future defense costs on a continuing basis."

¶ 19                                          JURISDICTION

¶ 20    Pekin timely filed its notice of appeal on December 14, 2016. This court thus has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered by the circuit court in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. Jan. 1, 2015).

¶ 21                                           ANALYSIS

¶ 22    On appeal, Pekin argues that the circuit court erred (1) by finding that Pekin owed Lexington a duty to defend and (2) by considering Lexington's third-party complaint in making its ruling. A circuit court's rulings on a motion on the pleadings and on a motion for summary judgment are reviewed *de novo*. *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446, 454-55 (2010); *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 360 (2006). We consider each of Pekin's arguments on appeal in turn.

¶ 23                                       A. Duty to Defend

¶ 24    Pekin first contends that the circuit court erroneously found that Pekin owes Lexington a duty to defend. An insurer's duty to defend is broader than its duty to indemnify. *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 154 (2005). To determine whether an insurer has a duty to defend, the court "must compare the allegations in the underlying complaint to the policy language." *Id.* at 154-55. "An insurer may not justifiably refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations set forth in that complaint fail to state facts that bring the case within or potentially within the insured's policy coverage." *Id.* at 154. In considering the underlying complaint, the allegations "must be liberally construed in favor of the insured." *Id.* at 155. "Moreover, *** it is the alleged conduct, and not the labeling of the claim in the [underlying] complaint, that is controlling." *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755-56 (2005).

¶ 25    According to Pekin, the circuit court erred in finding a duty to defend existed here because the Botello complaint did not contain allegations that created the potential for Lexington to be found vicariously liable for ACC's negligence. In response, Lexington and Westfield argue that "the underlying complaint alleges at least a threshold *potential* that ACC could be negligent and that Lexington could be vicariously liable for ACC's negligence" (emphasis in original) and that a duty to defend is therefore owed.

¶ 26    We considered this issue extensively, just recently, in *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 57. *Centex Homes* drew heavily on *CSR Roofing* (see *id.* ¶¶ 38-41), which was the case relied on by the trial court here. In *Centex Homes*, we observed that because the Workers' Compensation Act (820 ILCS 305/5(a) (West 2000)) provides tort immunity to the direct employer of an injured worker, "thereby barring the injured worker from bringing a personal injury complaint against his or her employer," the direct employer will generally not be named as a defendant in the underlying lawsuit. *Centex Homes*, 2017 IL App (1st) 153601, ¶ 36. As such, we stated that "the allegations of the underlying complaint must be read with the understanding that the employer may be the negligent actor even where the complaint does not include allegations against that employer." *Id.*

¶ 27    In *Centex Homes*, we recognized two aspects to the determination of whether the insurer owes an "additional insured" a duty to defend in these cases. "First, there must be a potential for finding that the named insured was negligent, and second, there must be a potential for holding the additional insured vicariously liable for that negligence." *Id.* ¶ 37. Contrary to Pekin's argument now on appeal, this is not a new version of the duty to defend test; it is simply a clarification of what the duty to defend means in the specific context of an additional insured that is only covered if found to be vicariously liable for the negligence of the named insured on a construction project.

¶ 28    We start with an examination of the first of these components. In *Centex Homes*, the first component—allegations that could support a claim that the named insured was negligent—was met because the underlying complaint alleged that the named insured was responsible for erection of the balloon wall and that the plaintiff, working for named insured, was injured when that wall fell and struck him. *Id.* ¶ 43. Based on these allegations, we found that the facts alleged in the underlying complaint sufficiently raised the potential of a claim based on the negligence of the named insured.

¶ 29    In this case, according to the allegations of the underlying complaint, Mr. Botello was injured when he fell from a ladder, and he was working on the ladder without "tie-off, without a proper lift, hoist, ladder, scaffold, or stand, when he fell a significant distance to the ground below." Although the underlying compliant does not expressly state who was supposed to have provided the "tie-off, lift, hoist, ladder, scaffold and stand" or who was responsible for ensuring that Mr. Botello was protected from injury when he was doing carpentry work on the Morton Grove project, the construction agreement between Lexington and ACC specifically provided that ACC was required to supply and install "[h]oisting and erection equipment"; to "initiate, maintain and supervise all safety *** precautions and programs"; and to "prevent damage, injury or loss" to all "employees performing all or any" of the work covered by the ACC construction agreement. Thus, it is clear that, when the underlying complaint is read together with the construction agreement, the Botello complaint alleges an injury that was potentially caused by ACC's negligence. Moreover, the construction agreement expressly stated that Lexington had "no responsibility or obligation in connection with safety."

¶ 30    Although, generally, a court compares only the allegations of the underlying complaint and the insurance policy to determine whether an insurer has a duty to defend, our supreme court has recognized that a court may consider documents beyond the underlying complaint in certain circumstances, as long as the court "does not determine an issue critical to the underlying action" in doing so. (Internal quotation marks omitted.) *Wilson*, 237 Ill. 2d at 460-62. In *Wilson*, our supreme court considered whether Pekin had a duty to defend its

insured, who was sued for assault, battery, and intentional infliction of emotional distress by the underlying plaintiff where the policy excluded intentional acts, unless they were taken in self-defense. *Id.* at 449-51. Our supreme court held that, because there was "no possible reason for [the underlying plaintiff], suing in tort for the intentional conduct of [the insured], to allege that [the insured's] actions were excused by, as the policy states: bodily injury resulting from the use of reasonable force to protect persons or property," it was proper for the court to consider the insured's counterclaim against the underlying plaintiff, which raised self-defense. (Internal quotation marks omitted.) *Id.* at 465-67. Similarly here, there was no reason for Mr. Botello to allege negligence against his direct employer in his complaint because, as we noted in *Centex Homes*, the Workers' Compensation Act gives a direct employer immunity from personal injury actions brought by an injured employee. As in *Wilson*, these are circumstances that allow a court to look beyond the allegations of the underlying complaint. See also *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 48 (considering a construction contract in addition to the allegations of the underlying complaint to determine whether Pekin had a duty to defend an additional insured). In contrast to the third-party complaint filed by Lexington against ACC, which Pekin objects to us considering because it was filed after Pekin had refused coverage, the ACC construction agreement predates any dispute about coverage and thus there is no concern that it was a self-serving document created to supply the missing allegations necessary to trigger coverage. *Cf. Pekin Insurance Co. v. Illinois Cement Co.*, 2016 IL App (3d) 140469, ¶ 10 n.1 (refusing to consider what it dismissed as a "self-serving" third-party complaint filed four months after Pekin sent a letter denying coverage to an additional insured).

¶ 31        When the responsibilities of ACC and Lexington, as provided in the construction agreement, are considered together with the allegations of the underlying complaint, there is a basis for a potential finding that negligence by the named insured—ACC—was the cause of Mr. Botello's injuries.

¶ 32        We must now determine whether the underlying complaint also contains allegations that support a potential claim that Lexington was vicariously liable for ACC's negligence. As we discussed at some length in *Centex Homes*, whether an additional insured can potentially be found vicariously liable for the negligence of the named insured has depended, in our case law, on the degree of control the underlying complaint alleges that the additional insured had over the named insured. In reviewing a number of cases that were decided on this issue, we observed in *Centex Homes* that those courts looked to the allegations of the underlying complaints and decided that "a certain amount of control over the work of the named insured will result in direct liability, greater control over 'operative detail' could properly result in vicarious liability, and a lesser amount of control could give rise to no liability at all." *Centex Homes*, 2017 IL App (1st) 153601, ¶ 54. As we also observed in *Centex Homes*, when deciding whether there was a duty to defend an additional insured for vicarious liability, many Illinois courts have analyzed this issue under section 414 of the Restatement (Second) of Torts (1965). See *Centex Homes*, 2017 IL App (1st) 153601, ¶ 45 (see cases cited therein). However, our supreme court recently clarified that section 414 deals with direct rather than vicarious liability. *Id.* ¶ 48 (citing *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶¶ 36-38). And, as we stated in *Centex Homes*, "[o]ur precedent on this issue, in addition to resting at least in part on what our supreme court has indicated is a misunderstanding of section 414, has often been inconsistent." *Id.* ¶ 49. In *Centex Homes*, we chose to follow the approach taken by this court in *CSR Roofing*, 2015 IL App (1st) 142473, and *Illinois Emcasco Insurance Co. v. Waukegan*

*Steel Sales, Inc.*, 2013 IL App (1st) 120735, of declining to parse the underlying complaint for allegations of a specific amount or level or type of control by the additional insured over the named insured. *Centex Homes*, 2017 IL App (1st) 153601, ¶ 51.

¶ 33 As we recognized in *Centex Homes*, "the underlying complaint will offer little real guidance on the issue of vicarious liability" because the underlying plaintiff "will likely have no knowledge as to what relationship or degree of control exists between the additional insured and the named insured." *Id.* ¶ 56. We continued:

"As a result, the underlying complaint will likely contain boilerplate language similar to the language in this case, and indeed in most of the cases cited by the parties, about participation 'in coordinating the work being done,' designating 'various work methods,' maintaining and checking 'work progress,' and participating 'in scheduling of the work and the inspection of the work.' Is this control over the operative detail? Is it supervisory control? Or is it not legally significant control at all? As our supreme court made clear, an insurer owes a duty to defend if the claim is 'potentially within policy coverage.' [Citation.] Accordingly, where the complaint alleges that the additional insured had control of operations and was liable for the actions of its agents, there is a 'potential' basis for vicarious liability." *Id.*

¶ 34 We see no reason to depart from the approach we outlined in *Centex Homes*. The allegations of the underlying complaint before us are sufficient to support a potential finding that Lexington was vicariously liable for the negligence of ACC. As in *Centex Homes*, the underlying complaint contains what we acknowledge are "boilerplate" allegations that Lexington was liable because of conduct of its agents and that Lexington had control over the work being done by those agents because it "participated in coordinating the work being done and designated various work methods, maintained and checked work progress and participated in the scheduling of the work and the inspection of the work"; "had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner or for any other reason"; "[i]mproperly operated, managed, maintained and controlled the premises"; and negligently "[f]ailed to supervise the work being done." From these allegations, the potential exists that a jury could find that Lexington retained sufficient operative control over the carpentry work on the project such that ACC was its agent, and that Lexington was thus vicariously liable for the negligence of ACC.

¶ 35 As is almost always the case in these additional insured construction cases, the ACC construction agreement provided that ACC was an "independent contractor." It is well-settled that a "principal is vicariously liable for the conduct of its agent but not for the conduct of an independent contractor." *Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App. 3d 1051, 1057 (2011). Pekin relies on this fact, but it does not alter our conclusion. If the independent contractor status in the construction agreement was the end of the inquiry, there would seldom, if ever, be coverage for an additional insured in these cases and the requirement that the named insured provide coverage would likely be meaningless. However, the designation of a named insured as an independent contractor is not the end of the inquiry. It is also well-settled that a contract "is not conclusive of the nature of the relationship between the parties. Despite an agreement labeling the relationship as that of an independent contractor, the facts of the case can demonstrate an agency status." *Bruntjen v. Bethalto Pizza, LLC*, 2014 IL App (5th) 120245, ¶ 80. "Specific conduct can demonstrate by inference the existence of an agency relationship, despite contractual evidence that the parties intended an independent contractor

- 8 -

relationship." *Sperl*, 408 Ill. App. 3d at 1057. The "independent contractor" label does not preclude the possibility that ACC could be found to be an agent of Lexington and that Lexington could therefore be liable for ACC's negligence.

¶ 36    The thrust of Pekin's argument here is that we are not bound by and should not follow the approach that we employed in *CSR Roofing* and in *Centex Homes* because it is "problematic." We recognized in *Centex Homes* that our approach was not necessarily consistent with all prior cases in this court, just as those cases were not consistent with each other. *Centex Homes*, 2017 IL App (1st) 153601, ¶¶ 42, 49. For the reasons we explained at length in *Centex Homes* (*id.* ¶¶ 42, 52), the analysis of *CSR Roofing* and *Centex Homes* is, however, completely consistent with that of our supreme court. See *Midwest Sporting Goods*, 215 Ill. 2d at 154-55 (noting that an insurer has a duty to defend if the allegations of an underlying complaint fall potentially within coverage "even if the allegations are groundless, false or fraudulent" and the allegations "must be liberally construed in favor of the insured"). "Because at the duty to defend stage our courts only consider whether the allegations of control could *potentially* give rise to vicarious liability, more general allegations should be sufficient so long as they do not eliminate any possibility of vicarious liability." (Emphasis in original.) *Centex Homes*, 2017 IL App (1st) 153601, ¶ 52.

¶ 37    We also note that this analysis is consistent with the approach taken recently by another panel of this court in *Pekin Insurance Co. v. AAA-1 Masonry & Tuckpointing, Inc.*, 2017 IL App (1st) 160200, ¶ 26, in which, as here, the allegations of the underlying complaint were "solely against" the additional insured. But the court found that reading those allegations in conjunction with a claim note of Pekin's—that stated the subcontractor was doing the work that caused the injury—and the construction agreement between the named insured and the additional insured "create[d] the possibility that [the additional insured] could be found liable for [the underlying plaintiff's] injuries based on [the named insured's] careless or negligent operation of the swing stage scaffolding." *Id.* As in this case, the named insured in *AAA-1 Masonry* was not a defendant in the underlying suit, yet the court recognized that the named insured could still be the negligent actor. *Id.* ¶¶ 7, 26. And while Pekin is correct that the question of whether the additional insured exercised sufficient control such that the named insured could be its agent did not appear to be at "issue" in *AAA-1 Masonry*, the facts and allegations that the *AAA-1 Masonry* court relied on to determine that the additional insured could potentially be found liable for the negligence of the named insured appear to be the same "boilerplate" facts and allegations that are present here. The construction agreement in *AAA-1 Masonry* defined the named insured as an independent contractor. *Id.* ¶ 4. The underlying complaint alleged that the additional insured had acted "individually and through agents, servants and employees" and "had the authority to stop the work, refuse the work and materials and order changes in the work, in the event the work was being performed in a dangerous manner, or for any other reason." *Id.* ¶ 8.

¶ 38    Here, for all the reasons discussed above, we find that the possibility of Lexington's vicarious liability for ACC's negligence brings this action within the broad duty to defend. It does not matter if a finding of vicarious liability is unlikely; "it is a potentiality." *Centex Homes*, 2017 IL App (1st) 153601, ¶ 57. Accordingly, Pekin has a duty to defend Lexington in the underlying lawsuit.

¶ 39           B. Consideration of the Lexington Third-Party Complaint

¶ 40       Pekin contends that, in entering judgment in favor of Lexington and Westfield, the circuit court improperly considered the third-party complaint filed by Lexington in the underlying action. But Pekin's entire argument is based on the incorrect presumption that this third-party complaint was a necessary predicate for finding a duty to defend. Because we have found that Pekin owes Lexington a duty to defend without any consideration of the third-party complaint, and we may affirm the circuit court on any basis supported by the record (*Guinn v. Hoskins Chevrolet*, 361 Ill. App. 3d 575, 586 (2005)), we need not consider this argument.

¶ 41                      CONCLUSION

¶ 42       For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 43       Affirmed.