2019 IL App (2d) 180786-U
No. 2-18-0786
Order filed December 16, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| ILLINOIS CONSTRUCTORS CORPORATION, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff/Counterdefendant-Appellee, | ) ) | |
| v. | ) ) | No. 17-MR-407 |
| UNITED FIRE AND CASUALTY CO., | ) ) ) | |
| Defendant/Counterplaintiff-Appellant | ) ) | |
| (Phoenix Corporation of the Quad Cities and Bob Farster, Defendants/Counterdefendants). | ) ) ) | Honorable David R. Akemann, Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hutchinson and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Trial court correctly found that insurer owed additional insured a defense.

¶ 2    In this lawsuit, the plaintiff/counterdefendant, Illinois Constructors Corporation (ICC), sought among other things a declaratory judgment on whether the defendant/counterplaintiff, United Fire & Casualty Co. (UF), owed it a duty to defend a separate lawsuit. The parties filed cross-motions for summary judgment on this issue, which the trial court resolved in favor of ICC. UF appeals. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The following facts are undisputed.  In 2013, ICC was a general contractor on a road construction project at a bridge over I-90.  That summer, it entered into a subcontract with Phoenix Corporation of the Quad Cities (Phoenix) to perform a portion of the work.  Among other things, the subcontract required Phoenix to: supply its own labor, materials, and equipment; follow ICC's clean-up and safety procedures; "assume the entire responsibility and liability for all damages or injury to all persons" related to the performance of its work; and indemnify ICC against all claims except those arising from ICC's own negligence.

¶ 5     The subcontract also required Phoenix to obtain insurance covering ICC as an additional insured.  Phoenix gave ICC proof of this coverage in August 2013.  The additional-insured coverage obtained by Phoenix was under its commercial general liability (CGL) and commercial auto policies issued by UF.  Those policies limited the coverage of additional insureds to vicarious liability for Phoenix's acts or omissions:

> "Such person or organization is an additional insured only with respect to your liability which may be imputed to that person or organization directly arising out of 'your work' [under] the written contract ***" or "directly arising out of the *** use of the covered 'autos' at the location(s) designated ***."

¶ 6     On December 12, 2013, Bob Farster, an employee of Phoenix, was injured when a construction vehicle driven by another Phoenix employee ran over his foot.  After the accident, UF opened a worker's compensation claim file, which contained notes that the accident was caused by another Phoenix employee.  The notes included an interview with that employee, who testified that, although the general contractor (ICC) was in charge of the worksite, he took direct instructions from the Phoenix supervisor on site.

¶ 7    Almost two years later, Farster filed a tort action against ICC. His complaint alleged that ICC "individually and through its agents" caused or permitted a dangerous condition and was negligent in various ways. Within two weeks, 2015, ICC tendered its defense and indemnification to UF. In February 2016, UF denied the tender under both the CGL and auto policies. In June 2016, ICC filed (in the tort action) a third-party complaint against Phoenix for contribution. ICC later added a breach of contract claim as well.

¶ 8    In March 2017, ICC filed the present suit against UF, Phoenix, and Farster. As to UF, ICC sought a declaratory judgment that it was entitled to defense and indemnity from UF in the tort action. UF responded with counterclaims seeking a contrary declaratory judgment.

¶ 9    Meanwhile, in the underlying tort action, Farster reached a good faith settlement with Phoenix (as the third-party defendant). As a result of the settlement, the trial court in that case dismissed ICC's contribution claim against Phoenix in November 2017. A few months later, Farster voluntarily dismissed the underlying tort action against ICC.

¶ 10    Back in the declaratory judgment action, discovery was proceeding. ICC obtained a copy of UF's worker's compensation claim file showing UF's knowledge that the accident was caused by another Phoenix employee. ICC also deposed the UF senior litigation specialist who handled the tender of defense and indemnity, Chyrl Johnson. Johnson had drafted the letter denying the tender. She testified that her denial was based solely on the opinion of an outside counsel. She also testified that UF's worker's compensation file, which showed that the accident was caused by another Phoenix employee, was never provided to that outside counsel.

¶ 11    Thereafter, the parties filed cross-motions for summary judgment on the issue of whether UF owed ICC a duty to defend and indemnify. On August 23, 2018, the trial court issued a memorandum order. It first found that UF did not owe ICC a duty of indemnification. As to the

duty to defend, however—which was subject to a more liberal legal standard—the trial court found that UF owed ICC such a duty. A few weeks later, the trial court entered judgment for ICC in the amount of $65,237.53, representing the expenses ICC had incurred in defending the underlying tort action.[1] UF appeals from this judgment and from the August 2018 order ruling in ICC's favor on the duty to defend.

¶ 12                                      II. ANALYSIS

¶ 13     UF raises a series of arguments challenging the trial court's determination that it owed ICC a duty to defend. The starting proposition for these arguments is that its additional-insured policies were limited and only covered any vicarious liability of ICC for Phoenix's fault (a proposition which ICC does not dispute here). UF contends that ICC cannot show that any potential liability that would come within this coverage, for a variety of reasons. UF first argues that, as a general matter, long-standing principles of fault apportionment preclude vicarious liability here. It then argues that the complaint in the underlying case does not allege any vicarious liability. Finally, it argues that the filing of ICC's contribution claim, the settlement between Farster and Phoenix in the underlying case, and the resulting dismissal of ICC's contribution claim against Phoenix foreclosed the possibility of vicarious liability.

¶ 14     In analyzing these arguments, we confine our analysis to the sole operative issue on appeal: whether UF owed ICC a duty to defend in the underlying case. As this is a legal question that led to the entry of summary judgment, we review the issue *de novo*. *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 129 (2005) (*de novo* review of legal issues related to

---

[1] The trial court's order awarding the defense costs and fees notes that the parties agreed as to the amount of those costs and fees.

insurance contracts); *Gaylor v. Village of Ringwood*, 363 Ill. App. 3d 543, 547 (2006) (*de novo* review of resolution of cross-motions for summary judgment).

¶ 15                                  A.  Applicable Legal Standards

¶ 16    To determine whether an insurer owes a duty to defend, we begin by comparing the coverage under the policy with the allegations of the complaint.  If, construed broadly, "the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured."  *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.*, 215 Ill. 2d 146, 155 (2005).  "In addition, if several theories of recovery are alleged in the underlying complaint against the insured, the insurer's duty to defend arises even if only one of several theories is within the potential coverage of the policy."  *Id.*

¶ 17    Importantly, the complaint need not expressly allege facts demonstrating that the claim is covered by the policy:

> "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy."  *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.*, 337 Ill. App. 3d 356, 361 (2003).

Further, a court considering whether a duty to defend is owed may look beyond the allegations of the complaint and take notice of unpleaded but uncontested facts, including evidence obtained during discovery and the allegations of third-party complaints, so long as the court does not actually determine ultimate questions of liability.  *Pekin Insurance Co. v. Wilson*, 237 Ill. 2d 446,

462 (2010) ("not only the contents of third-party complaints in the underlying action but other evidence may be considered in determining the insurer's duty to defend").

¶ 18    Where, as here, the policy provisions at issue are additional-insured endorsements that cover only any vicarious liability of the additional insured (typically, a general contractor) for the negligence of the named insured (typically, the subcontractor/employer of the injured person), two elements are needed to establish the insurer's duty to defend the additional insured. "First, there must be a potential for finding that the named insured was negligent and, second, there must be a potential for holding the additional insured vicariously liable for that negligence." *Pekin Insurance Co. v. Centex Homes*, 2017 IL App (1st) 153601, ¶ 37.

¶ 19    "In order to meet the first requirement, the underlying complaint need not expressly allege that the named insured was negligent." *Id*. ¶ 38. Rather, the first element can be met where the facts alleged in the underlying complaint (or, as noted above, in any third-party complaint, as well as other unpleaded but known and undisputed evidence) would support a theory of recovery based on the negligence of the named insured. See *id*. ¶ 39.

¶ 20    The second element—that there is a potential basis for holding the additional insured vicariously liable—is satisfied "where the complaint alleges that the additional insured had control of operations and was liable for the actions of its agents." *Id*. ¶ 56. Accordingly, courts have held that the second element is met where the underlying complaint alleged that a general contractor/additional insured caused the injury "by and through its agents," and the pleadings alleged that the employer/named insured might be one of those agents. See *id*. ¶ 57; *Illinois Emcasco Insurance Co. v. Waukegan Steel Sales, Inc.*, 2013 IL App (1st) 120735, ¶ 23. With these standards in mind, we turn to the arguments raised by UF.

¶ 21         B. Do General Principles of Fault Apportionment Preclude Liability?

¶ 22    UF begins with a convoluted argument regarding the source of ICC's potential liability. ICC's third-party complaint against Phoenix cited the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq*. (West 2014)) and sought *pro rata* contribution for any vicarious liability ICC might incur as a result of negligence by Phoenix. It did not allege that Phoenix was solely at fault for the accident. Nevertheless, UF insists that vicarious liability is founded on the idea that a blameless principal may be held liable for its agent's actions based solely on the agency relationship, and thus vicarious liability is conceptually aligned only with indemnification (fault transfer), not contribution (fault apportionment). UF contends that ICC's third-party complaint, which is premised on vicarious liability, only makes sense if is it viewed as seeking indemnification rather than contribution. UF then attacks ICC's supposed quest for indemnification as disfavored, arguing that the trend in this area of the law has been toward contribution as opposed to indemnification.

¶ 23    There are several flaws in this argument, the most obvious of which is UF's effort to rewrite ICC's third-party contribution claim. Further, the fact that ICC also could have sought indemnification for Phoenix's negligence did not prevent it from bringing its contribution claim, as parties may raise alternative theories of liability, even inconsistent ones. 735 ILCS 5/2-604 (West 2014); *Heastie v. Roberts*, 226 Ill. 2d 515, 558 (2007). Finally, the legal support for UF's argument is lacking. UF relies on *Sperl v. Henry*, 2018 IL 123132, ¶¶ 24-27, as support for the idea that vicarious liability is "incompatible" with contribution, but *Sperl* (which held that vicariously liable defendants are within the scope of the Contribution Act as long as they are potentially capable of being held liable to the injured party) does not support that conclusion. Further, *Sperl* did not involve any issue regarding an insurer's duty to defend, which "is broader

than its duty to indemnify." *Wilson*, 237 Ill. 2d at 456. We find no merit to UF's contention that general principles of fault apportionment preclude any assertion of vicarious liability by ICC.

¶ 24                    C. Did ICC Establish Its Potential Vicarious Liability?

¶ 25    To give rise to a duty to defend an additional insured such as ICC, the allegations of the underlying complaint, taken together with the allegations of the third-party complaint and any uncontested but unpleaded facts, must show (1) potential liability on the part of the named insured (here, Phoenix) and (2) potential liability by the additional insured (ICC) for Phoenix's negligence. *Centex Homes*, 2017 IL App (1st) 153601, ¶ 37. UF argues that ICC has not met this standard.

¶ 26    In a thorough memorandum order, the trial court addressed each of these requirements. It noted that Farster's underlying complaint did not in itself allege any negligent acts or omissions by Phoenix: although the complaint alleged that Phoenix was Farster's employer, the only allegations of negligence related to ICC's own actions. However, the trial court was also permitted to consider unpleaded but undisputed facts known to the insurer. See *Wilson*, 237 Ill. 2d at 462; *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 43. ICC's motion for summary judgment presented several such facts, including Phoenix's contract with ICC (which provided that Phoenix was to furnish the labor and services including "competent supervision"), and the fact that another Phoenix employee was driving the worksite vehicle that caused Farster's injuries. The trial court found these facts sufficient to establish Phoenix's potential liability to Farster, and we agree. We also note that UF knew that the employee who caused the accident said that he was supervised by Phoenix personnel. All of these facts are sufficient to show that Phoenix was potentially liable for the accident. Accordingly, the first requirement for UF to owe ICC a duty to defend was met.

¶ 27    The second requirement is that ICC was potentially liable for Phoenix's negligence. *Centex Homes*, 2017 IL App (1st) 153601, ¶ 37. The trial court found that this requirement was met through allegations in the underlying complaint, which alleged that ICC "was in charge of construction, repairs, safety, and/or alteration and *** operated, managed, *** and controlled *** individually and through its agents *** and employees *** the construction site." See *id*. ¶ 57 (finding that similar allegations met the second requirement); *Pekin Insurance Co. v. Lexington Station, LLC*, 2017 IL App (1st) 163284, ¶ 34 (similar allegations were sufficient to allow a jury to find that the general contractor retained sufficient control over the work being done by the subcontractor that the general contractor could be held liable for the negligence of the subcontractor).

¶ 28    Here again, we agree with the trial court's analysis. We note that the allegations of direct liability by ICC do not foreclose the possibility that ICC also could be found vicariously liable for Phoenix's negligence. See *Centex Homes*, 2017 IL App (1st) 153601, ¶ 42; *Pekin Insurance Co. v. CSR Roofing Contractors, Inc.*, 2015 IL App (1st) 142473, ¶ 49 ("[t]he mere fact that allegations of direct liability are included in the complaint, however, does not defeat [the additional insured's] claim that it could also potentially be held vicariously liable").

¶ 29    UF does not really challenge the conclusion that, under *Centex Homes*, *Lexington Station*, and their predecessors, ICC has shown the two requirements for a duty to defend. Rather, it argues that a recent Illinois Supreme Court case, *Carney v. Union Pacific R.R. Corp.*, 2016 IL 118984, requires a more stringent pleading standard. Specifically, UF argues that, under *Carney*, ICC must rely solely on the allegations of the underlying complaint to show that it is potentially vicariously liable for Farster's injuries, and that no vicarious liability can be found where that theory is not specifically alleged in the underlying complaint.

¶ 30    UF raised this same argument in the trial court, and that court's memorandum opinion contains a good analysis of the effect of *Carney* on duty-to-defend cases.  Although we have engaged in our own analysis as required under the *de novo* standard of review, we find the trial court's analysis and its application of *Carney* to the present case to be correct.

¶ 31    *Carney* involved a workplace accident that occurred during the removal of an old railroad bridge.  The owner, Union Pacific, hired Happs, an independent contractor, to remove the old bridge.  Happs in turn hired a subcontractor, Patrick Carney.  One of Carney's employees (his son) was injured.  *Carney*, 2016 IL 118984, ¶ 6.  The employee sued both the independent contractor and the owner.  *Id*. ¶ 10.  The trial court granted summary judgment in favor of the owner.  The appellate court reversed, holding that although an employer ordinarily cannot be held liable for the negligence of an independent contractor, under section 414 of the Restatement (Second) of Torts, there is an exception where the employer retains control over any part of the work.  The appellate court found that there was a question of fact as to whether Union Pacific retained such control over the work performed by Happs that it could become directly or vicariously liable to the plaintiff. *Id*. ¶ 12.

¶ 32    The supreme court reversed the appellate court and affirmed the trial court's grant of summary judgment to Union Pacific.  In doing so, it laid out the difference between vicarious liability, which does not extend to the actions of an independent contractor, and liability under section 414, which applies only to an employer's liability for its own negligence where it retains some control over the independent contractor's work.  *Id*. ¶¶ 32-33.

> "If the control retained by the employer is such that it gives rise to a master-servant relationship, thus negating the person's status as an independent contractor, the employer may be liable for the negligence of the contractor's employees under the law of agency.

> Agency law, under which an employer may be vicariously liable for the torts of its employees, is distinct from the principles encompassed in section 414, under which an employer is directly liable for its own negligence. In short, 'section 414 takes over where agency law ends.' " *Id.* ¶ 38 (quoting *Aguirre v. Turner Construction Co.*, 501 F.3d 825, 829 (7th Cir. 2007)).

The supreme court then examined whether the plaintiff had shown that Union Pacific could be held either vicariously or directly liable. It declined to consider any assertion of vicarious liability because the plaintiff had not pled such a theory in his complaint: the complaint alleged only that Union Pacific was liable for its own actions, not that it was liable for the actions of Happs. *Id.* ¶ 40.

¶ 33　It is this holding of *Carney* that UF seeks to apply here: the principle that the possibility of vicarious liability should be assessed only by looking to the complaint. We find this argument flawed for several reasons.

¶ 34　As an initial matter, *Carney* did not involve any issue regarding an insurer's duty to defend, which involves a different standard for pleading. See *Wilson*, 237 Ill. 2d at 456 ("the insurer's duty to defend its insured is broader than its duty to indemnify"). As noted above, a duty to defend arises whenever the insured is potentially liable, and may be found even where the complaint does not expressly allege any facts supporting vicarious liability, so long as the facts pled do not foreclose the possibility of vicarious liability. *Northwestern National*, 337 Ill. App. 3d at 361. *Carney* did not address the standards applicable in a duty-to-defend analysis, and in our view it cannot be read as altering those standards. In an earlier decision, *Wilson*, 237 Ill. 2d at 459, the supreme court held that courts may look beyond the allegations of the underlying complaint to determine whether an insurer owes a duty to defend. If the supreme court in *Carney* had intended

to reconsider *Wilson*, it would have said so. But *Carney* did not even mention *Wilson*. Accordingly, we reject the argument that *Carney* changed the standards applicable to duty-to-defend cases or required courts to look only to the allegations of the underlying complaint.

¶ 35     This is not to say that *Carney* has no relevance to a duty-to-defend analysis. *Carney* clarified that, in determining whether the possibility of vicarious liability exists, a court must consider whether the facts alleged are compatible with a level of control that could give rise to a master-servant relationship. *Carney*, 2016 IL 118984, ¶ 38. However, in declaratory judgment cases where the issue is whether an insurer owes a duty to defend, the court assesses only the *potential* liability of the insured and must refrain from making any determination about *actual* liability. See *American Family Mutual Insurance Co. v. Savickas*, 193 Ill. 2d 378, 387 (2000) ("it is inappropriate to resolve a declaratory judgment action in such a manner as would bind the parties in the underlying litigation on any issues therein"); *Murphy v. Urso*, 88 Ill. 2d 444, 456 (1981) (same); *CSR Roofing*, 2015 IL App (1st) 142473, ¶ 55 (declining to address actual liability of additional insured because doing so "may tend to determine an issue crucial to the determination of the underlying lawsuit" and because the duty to defend requires only potential liability). Thus, the sole issue in a suit such as this one is whether the allegations of the underlying complaint are incompatible with the potential vicarious liability of the additional insured. See *Centex Homes*, 2017 IL App (1st) 153601, ¶¶ 51-56 (explaining in detail why, even after *Carney*, courts considering the duty to defend should *not* "pars[e] the underlying complaint for allegations" regarding the level of control by the additional insured over the employer or decide whether those allegations rise to the level of a master-servant relationship). As we have held, here the underlying complaint alleges facts from which a jury could find ICC liable for Phoenix's negligence. To the extent that *Carney* has any applicability here, it is not contrary to our conclusion. We therefore

reject UF's argument and find that ICC adequately demonstrated the two requirements for a duty to defend.

¶ 36        D.  Effect of the Settlement and Dismissal of ICC's Contribution Claim

¶ 37     Lastly, UF argues that ICC negated any possibility of vicarious liability by filing its third-party contribution claim against Phoenix in the underlying suit.  It also argues that vicarious liability was further rendered impossible when that contribution claim was dismissed following the settlement between Farster and Phoenix.  Essentially, UF is raising a backward-looking argument, contending that these later events show that vicarious liability was never a real possibility and thus it owed ICC no duty to defend.

¶ 38     This argument overlooks or ignores the fact that UF's duty to defend its additional insured ICC arose *before* any of these events occurred.  An insurer's duty to defend is triggered when it knows of a lawsuit against its insured.  See *Cincinnati Companies v. West American Insurance Co.*, 183 Ill. 2d 317, 329 (1998).  Here, UF learned of Farster's lawsuit against ICC no later than the end of 2015, when it acknowledged receiving ICC's tender of defense and indemnification.  At that point, if ICC was potentially subject to vicarious liability for Phoenix's actions (as we have held it was), then UF owed ICC a duty to defend.  ICC did not file its third-party claim until approximately six months after UF denied ICC's tender of defense.  "When the underlying complaint against the insured alleged facts within or potentially within the scope of policy coverage, the insurer taking the position that the complaint is not covered by its policy must defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage."  *Midwest Sporting Goods Co.*, 215 Ill. 2d at 155.  Here, however, UF did neither.  It is therefore liable for the cost of ICC's defense.

¶ 39                          III. CONCLUSION

¶ 40　For the reasons stated, the orders entered by the circuit court of Kane County dated August 23, 2018, and September 17, 2018, are affirmed.

¶ 41　Affirmed.